## McDANIEL v. THE STATE, 8 Smedes & Marshall, 401.

### MURDER.

The statute, H. & H., 610, § 37, provides that upon every application for a continuance, the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or witnesses, in order that the court may be able to judge of the materiality of such facts to the issue or issues in the case; this rule applies also to criminal cases.

The continuance of a cause is matter resting in the sound discretion of the court, and an appellate tribunal will never interfere to control the exercise thereof but with extreme reluctance and caution. To justify such interference there must have been some palpable error committed, without the correction of which manifest injustice will result.

When an application for a new trial is made, the judge is supposed to know nothing of the testimony which will be adduced; he can, therefore, only determine the materiality of the facts stated in the affidavit, by the consideration of what might be urged in the defence, if they should be established. His means of judging are less satisfactory at that stage than at the close of the trial; therefore, if at the conclusion the court is convinced that the continuance should have been granted, it should allow a new trial; and if it refuse a new trial, the party asking it, should give all the testimony in his bill of exceptions, that the appellate court may see the bearing of the whole evidence, and thus be able to judge of the force of the application for a continuance.

The dying declarations of one who has been killed, are admissible in evidence against the slayer, notwithstanding the constitutional provision that the accused "shall be confronted with the witnesses against him;" their admissibility is confined to cases of homicide only.

It is essential to the admissibility of dying declarations, and it is preliminary to be proved by the party offering them in evidence, that *they were made under a sense of impending death;* but it is not necessary that they should be stated at the time, to be so made. It is enough if it satisfactorily appears, in any mode, that they were made under that sanction, whether it be proved directly by the expressed language of the deceased, or be inferred from his evident danger, or the opinion of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case.

Dying declarations under the following circumstances were admitted in evidence.

On the day the mortal stroke was given, the witness told the deceased that he thought his deposition ought to be taken, as, in the opinion of the witness, he must inevitably die before morning; the deceased replied he thought so too; and afterwards exclaimed, "O Lord! I shall die soon." His declarations were reduced to writing, and read over to him twice, and signed by him. The attending physician on the evening previous, had held out to the deceased some hope of recovery, but told him his chance was bad. Deceased lived some ten days after making the declarations.

On the trial of a prisoner for murder, where the fact of the killing by the prisoner has been clearly proved, evidence as to the character of the prisoner for peace or violence, is inadmissible; but if the guilt of the prisoner be doubtful, such testimony is admissible, and is not confined to the general character of the prisoner, but have reference to the nature of the charge against him; but rebutting testimony as to character may be introduced by the prosecutor, and the presumption arising from such evidence of general character is of little weight.

Where, on the trial of a prisoner for murder, the court charged the jury that "every homicide is presumed to have been committed with malice aforethought, and it devolves on the prisoner to prove the circumstances which excuse the act;" the charge was held to be too broad and unrestricted; that it should have been qualified by adding, "unless they arise out of the evidence produced against him."

Every indictment of murder charges that the prisoner did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased. The fact of killing, and the intent, must concur to constitute the crime of murder; and if the jury from the whole evidence doubt either of these facts, the prisoner is entitled to the benefit of such doubt; or to be either acquitted or convicted of a crime of less grade than murder, according to the circumstances. But in cases where the killing is proved, and no circumstances appear to the contrary, the law presumes malice in the slayer; and these presumptions, if unopposed, may amount to full proof of the fact.

No trespass on the personal property of a person will justify the killing of the trespasser; and any such killing with a deadly weapon will constitute murder.

To constitute larceny, it must be proved that the goods were wrongfully or fraudulently taken and carried away, with the intent of the taker to convert them to his own use. If there be no such intention, it amounts to a trespass only. If the taking be open and in the presence of the owner or other persons, it is only a trespass. But if the goods be taken either by violence, or by putting the owner in fear, it is sufficient to constitute robbery.

Instructions containing only mere propositions of law, when refused by the court, is no ground of error.

Error to Hinds circuit court.    Coalter, J.

James M. McDaniel was indicted in the court below for the murder of Alexander Frazier, was arraigned and pleaded not guilty at the April term of the court, 1846.

He made application for a continuance on the ground that two witnesses, residents of the county of Hinds, were absent without his procurement or consent, whose evidence would be material for him, as they would testify to facts which he could not prove by others. The court overruled the application, and the prisoner excepted.

On the trial, R. O. Edwards, for the state, testified that he

was called to see Frazier after he was wounded, some ten or eleven days before his death; and during his conversation between them, he told Frazier his depositions ought to be taken, as in his (Edwards') opinion, he (Frazier) would die before morning; the deceased replied that he thought he would die before morning; and afterwards that he would die soon. He exclaimed, "Oh, Lord! I shall die soon." The witness had never seen the deceased before; and the subject of his approaching death was not alluded to until the witness introduced it. The statements of the deceased were drawn up in writing, which was twice read over to him in his hearing and sanctioned by him, and his signature affixed to it. Upon this preliminary proof, the court decided that the statements of the deceased, as thus drawn up, were admissible as his dying declarations. To this paper was affixed the certificate of a magistrate, of the oath of the deceased to the truth of the statements contained in it. Exception was taken to the admission of this paper as the dying declarations of the deceased.

The dying declarations of the deceased disclosed these facts:

That as he was traveling on the road from Raymond to Vicksburg, about between the hours of twelve and two o'clock, he met a man of light complexion, who said his name was McDaniel, and that he persuaded him to turn back and go with him to his residence. The offer of McDaniel, which induced him to accompany him, was to pick out cotton; that McDaniel inquired of him if he had any money, and he answered that he had some; they did not proceed far when they left the main road, being informed by McDaniel that he would go a nearer route to his residence than the usual one. That deceased was on foot and the prisoner on horseback; but the prisoner dismounted and accompanied him on foot, leading his horse; that the deceased traveled in front and McDaniel followed behind him; they did not proceed far when they reached a creek bottom; they followed that some distance when McDaniel drew a pistol and shot him in the back; deceased fell to the ground, and cried out, and saw McDaniel mount his horse and ride off in a gallop; the beast McDaniel was riding was a small mare pony, with white legs and feet, with a flaxen mane and tail, with

a large white spot in her face. The pony was presented to the deceased, and he said that it was the same.

In the course of the examination of Edwards, he was asked by the district attorney : " Do you know what became of McDaniel after the killing ?" which he answered in the negative. He was then asked : " Do you know anything touching the whereabouts of the defendant, and whether he absconded ?" This question was objected to by the prisoner's counsel, as leading. The objection was overruled, and the prisoner excepted.

Dr. Thompson, who was the only physician who attended deceased, testified that he examined the wound described in the indictment, on the day it was inflicted and often afterwards ; that he had repeatedly conversed with the deceased on the prospects of his recovery, and prior to taking down his dying declarations had told him his chances were bad, his recovery very doubtful, and not until after the dying declarations were made did he tell him his case was desperate.

Brooks, a witness for the state, testified, that before the dying declarations were made, he heard Dr. Thompson tell Frazier that he would not recover.

The following instructions were given at the instance of the state, to wit :

1. Every homicide is presumed to have been committed with malice aforethought; and it devolves upon the prisoner to prove the circumstances which excuse the act.

2. No trespass upon personal property will authorize the killing of a man ; any such killing would be murder if committed with a deadly weapon.

3. To constitute the crime of larceny, there must be a felonious taking as well as carrying away ; and it is necessary to constitute larceny, that the property should be taken in order to be converted to the defendant's own use.

4. To constitute robbery, the person robbed must have been first in fear of his person or property.

5. A man who takes property, claiming it for himself or another, commits no larceny.

The following are the instructions asked for by the prisoner, and refused.

1. If the jury believe from the evidence that the statement of the dying declarations of the deceased was not designed as a dying declaration, and that the same is not satisfactorily proved to have been drawn up at his instance or subscribed by him with a perfect knowledge of its contents, and under a strong sense of his being about to die, or that he was on the verge of immediate dissolution, they are bound to disregard it in making up their verdict.

2. If the jury believe from the evidence in the case, that the deceased did not actually make dying declarations, designing them to operate as such, under a strong sense of impending dissolution, they are bound to disregard all such evidence.

3. If the jury believe from all the evidence in the case, that McDaniel killed Frazier, whilst the latter was carrying off his pony without his consent, with a view of permanently depriving the owner of the same; and for the purpose of preventing a fraudulent scheme of taking and carrying away said pony, without his, the said owner's, consent; and that the means employed by McDaniel were actually necessary to such prevention, they are bound to acquit.

4. If the jury conceive, upon considering all the evidence that there is one or more material facts of a character inconsistent with the hypothesis of guilt, they are bound to acquit.

This instruction was refused as asked, and modified by striking out the word "hypothesis," and adding after "guilt" the words "of accused."

5. And this they must do, though they find there are circumstances, however material, produced before them satisfactorily, which do not harmonize with the hypothesis of innocence.

6. It is lawful to exert such force against a trespasser who comes to take the goods of another, as is necessary to make him desist; and if the jury believe from the facts that the deceased had taken the horse of the accused and was riding him off beyond the reach of probable recapture, that the accused, after having repeatedly hailed him, slew the trespasser, he is not guilty of murder.

7. If the jury believe from the evidence, that at the time of killing Frazier the prisoner had reasonable grounds to apprehend

a design on the part of the deceased to commit a felony, or to do the prisoner some great personal injury, and there was imminent danger of such design being accomplished, they are bound to acquit him.

The jury retired to consider of their verdict, and returned into court that they could not agree, and being asked by the court if they wished to hear any further testimony, replied that they did not, but wished to know whether they could find the prisoner guilty of murder or manslaughter in the first degree. The prisoner objected to this intercourse between the court and jury and to any further instruction from the court to them on any point on which they had not been previously instructed.

The court decided not to give them any further instructions, but would give them any information on any point of law that they desired, but proceeded to instruct them as follows : " The jury are exclusive judges of what is proven before them and from the testimony before them, it is for them to say whether or not the defendant is guilty of any offense on this indictment ; they can say he is not guilty ; or they can say he is not guilty of murder but is guilty of manslaughter, according to the testimony."

The jury found the prisoner guilty of murder, the court sentenced him to be hung, and he prosecuted this writ of error.

The following errors are assigned :

1. In refusing a continuance of the cause, on affidavit of the prisoner, and forcing him to a trial in the absence of testimony disclosed in his affidavit.

2. In admitting the dying declarations of the deceased on the preliminary proof adduced.

3. In permitting the district attorney to propound to the witness, Edwards, several leading questions, as disclosed in the bill of exceptions.

4. In excluding the interrogatory propounded by prisoner's counsel by Mrs. McDaniel, a witness for the defense, touching the declarations and threats of Atwell.

5. In excluding the investigation of the character of the accused for peace or violence, in manner and form as defendant's counsel ought to conduct such examination.

6. In giving the second, third, fourth and fifth instructions for the state.

7. In refusing to give the first, third, fourth and seventh instructions asked for by the prisoner's counsel.

8. In instructing the jury after the retirement from the bar, and in opposition to the remonstrances of prisoner's counsel.

9. In modifying the fifth instruction asked for by prisoner's counsel.

10. In disregarding the sixth instruction asked by prisoner's counsel, and neither giving nor refusing the same.

11. The court erred in passing sentence upon the prisoner.

*A. R. Johnston* and *H. S. Foote* for the plaintiff in error.

The paper called the "dying declarations of the deceased" ought not to have gone to the jury; because the preliminary proof required was not adduced prior to its introduction; because the magistrate who attested it, and administered the oath to the deceased, was not produced; and because the whole mass of testimony relating to that document shows that it ought not to have been admitted as an instrument of evidence. 1 Greenl. Ev. 186, 188, 189, 190; 1 Phil. Ev. 235; 1 Starkie Ev. 28, 29; 2 Phil. Ev. 606, and notes.

It was error to permit the state to propound leading questions to its own witnesses on direct examination.   1 Greenl. Ev. 481; 1 Starkie Ev. 149, notes, and cases cited.

It was error in the court below to refuse to admit testimony touching the general character of the prisoner, for peace or violence. 1 Greenl. Ev. 61; 2 Starkie in Ev. 314, 315; notes and cases cited.

The second, third, fourth and fifth instructions for the state were manifestly wrong. 4 Black. Com. 180; 2 Starkie Ev. 524, 443, 444; 4 Black. Com., 232, note 8; Russ. & Ry. C. C. 307, 18; Burns's Jus., 24th ed. 209; 2 Russ. on Crimes, 94; ib. 61, note A; How. & Hutch., 708.   The fifth instruction need only to be read to show that it should have been refused.   If it is correct, all rogues would escape punishment.

The court improperly refused instructions for the prisoner. See 1 Greenl. Ev. 186, 188, 189, 190; 1 Phill. Ev. 235; 1 Star-

kie Ev., 28, 29 ; ib., 191, note 1 ; 1 Greenl. Ev. ; 4 Black. Com. 180 ; 1 Starkie 523 ; How. & Hutch., 694.

The court cannot legally instruct the jury after they have retired to consider of their verdict. How. & Hutch. Dig. 482, § 9 ; ib. 493.

*R. A. Clarke,* on same side.

*J. D. Freeman,* attorney general.

Cited 1 Peter's Dig., 593 ; 1 Greenl. Ev. 188, 189, 190 ; Roscoe Cr. Ev. 31, 33 ; 1 East P. C. 357, 358 ; 1 Starkie Ev. 523 ; 1 Leach, 503 ; 6 Car. & Payne, 157, 386 ; 9 ib., 157 ; 7 ib., 187 ; 1 Har. Dig., 1943 ; 1 Chitty Cr. Law, title "Dying Declarations ;" Phillip's Ev. Cow. & Hill's notes ; Black, Com., title "Larceny ;" Chitty Cr. Law, title "Larceny ;" 5 Humph., 383.

Clayton, J.

This was an indictment for murder in the circuit court of Hinds, which resulted in the conviction of the defendant. A great number of errors have been assigned as causes of reversal.

The first is, that there was error in overruling an application for a continuance upon the affidavit filed. Our statute upon this subject lays down a very explicit rule. It provides that upon every application for a continuance, the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or witnesses, in order that the court may judge of the materiality of such facts to the issue or issues in the case.[1] H. & H., 610, § 37.

The continuance of a cause is matter resting in the sound discretion of the court, and an appellate tribunal will never interfere but with extreme reluctance and caution.[2]   To justify such interference, there must have been a palpable error committed, without the correction of which manifest injustice will be wrought. 5 Humphreys, 568 ; Bellew v. The State, 2 Rob. Virginia Rep. 849 ; 10 Leigh, 692 ; 4 Humph., 202.

[1] Revised Code of 1857, 503, art. 151.
[2] Bohr v. Steamboat Baton Rouge, 7 S. & M., 715; Lindsay v. State, 15 Ala, 43; State v. Duncan, 6 Iredell, 98; Green v. State, 13 Mo., 382; Wharton Am. Cr. Law, 2936; People v. Thompson, 4 Cal., 238; Bledsoe v. Commonwealth, 6 Randolph, 674; State v. Hildreth, 9 Iredell, 490; Fiolt v. Commonwealth, 13 Grattan, 564; State v. Thomas, 8 Rich., 295; McKinney v. People, 2 Gilman, 540; Baxter v. People, 3 ib., 368; State v. Patterson, 1 McCord, 177; Wood v. Young, 4 Cranch, 237; 1 Archbold, Cr. Pr. & Pl., 567.

When the application for a continuance is made, the judge is supposed to know nothing of the testimony which will be adduced, he can therefore only determine the materiality of the facts stated in the affidavit by the consideration of what might be urged in the defence, if they should be established. His means of judging are less satisfactory at that stage than at the close of the trial. When a continuance has, in the opinion of counsel, been improperly refused, it is the regular course of practice to move for a new trial, after the verdict has been rendered, when the judge can see more clearly the bearing of the testimony sought to be introduced, and can have an opportunity of correcting his error, if convinced that he has committed one. If he refuse the new trial, the bill of exceptions embodying the whole testimony will furnish this court with the means of forming a correct conclusion. This is safer than merely to bring up the affidavit for a continuance, without all the other testimony in the cause. Whether the continuance was improperly refused in this case, we need not determine, as the judgment will be reversed upon another ground.

The next alleged error which we shall notice, is the admission of the dying declarations of the deceased. The admission of such declarations in any case is an exception to the general rule of evidence. It is only permitted in cases of homicide, and the exception stands upon the ground of the public necessity of preserving the lives of the community, by bringing manslayers to justice.[1]  1 Greenl., 193.

It is essential to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them in evidence, that *they were made under a sense of impending death ;*[2] but it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears, in any mode, that they were made under that sanction, whether

[1] Wharton Am. Cr. Law, 669, *et seq.;* and cases cited ; 2 Russell on Crimes, 752, *et seq.;* 1 East P. C, 353, § 124; 1 Archbold Cr. Pl., 449, *et seq.*, notes; Rex v. Van Butchell, 3 C. & P. 629; Rex v. Mead, 4 D. & R. 120, 1 Greenl. Ev., 156.

[2] See note (*) supra. and cases cited, Rex. v. Mead, 4 D. & R. 120; 2 B. & C, 605; 1 Greenl. Ev. 156–162, 346; 3 ib., 236; Rex v. Hutchinson, 2 B. & C., 608, note; 1 East. P. C., 353; King v. Commonwealth, 1 Va. Cases, 78; Woodsides v. State, 2 How., 655 (supra,      ); Campbell v. State, 11 Ga., 353; Nelson v. State, 7 Humph. 542: Smith v. State, 9 Humph. 9; Hill v. Commonweallh, 2 Gratt., 594; Moore v. State, 12 Ala., 764; People v. Green. 1 Denio, 614.

it be directly proved by the express language of the declarator or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances of the case, all of which are resorted to in order to ascertain the state of declarant's mind.[1]  1 Greenl., 195.  The objection to their admission in this case is, that it does not sufficiently appear, that, at the time, the dying declarations were made, the deceased was sufficiently impressed with a sense of his impending dissolution.  Upon this point the evidence is, first, that of R. O. Edwards, who testified, that on the night when the declarations were made, he told Frazier, the deceased, that he thought his deposition ought to be taken, as, in the opinion of witness, he must inevitably die before morning.  The deceased replied, he thought so too.  Afterwards deceased exclaimed, O Lord! I shall die soon!  His declarations were reduced to writing, read over to him twice, and signed by him.  The attending physician was examined, who stated, that, in the preceding evening, he had held out some hopes of recovery to the deceased; but told him his chance was bad.  The interview with Edwards was during the following night; the deceased lived some ten days afterwards. It seems to us that every requirement of the law was fully satisfied.  The situation of the deceased, the opinions of those around him, his own solemn declarations, all show, that, at the time, he believed he was on the very threshold of death.  In Rex. v. Mosley, 1 Moody Cr. Cases, 97, the declarations were made some eleven days before death, at a time when the surgeon did not think the case hopeless, and told the patient so; but the patient thought otherwise, and the declarations were received.  1 Greenl. 195, n.

We cannot yield our assent to the position that the introduction of such testimony violates the provision of the federal constitution, which secures to the accused the right "to be confronted with the witnesses against him."  Such evidence has been admitted in many of our sister states, and excluded in none, so far as we know.  It would be a perversion of its meaning to exclude the proof, when the prisoner himself has been the

[1] Smith v. State, 9 Humph., 9; vide cases cited in notes 2, 3, supra.

guilty instrument of preventing the production of the witness by causing his death. This was expressly decided in Woodsides v. The State, 2 How., 656.

The objection that some of the questions propounded to the witnesses were leading, need not be the subject of remark. That point has already been sufficiently discussed in the case of Toumey.

An objection is taken to the excluding of an inquiry on the part of the defendant, as to his general character for peace or violence; the court holding that the inquiry must be directed to the general character, without reference to particular traits. The rule is, that where evidence touching the general character of the party is admitted, it ought manifestly to bear reference to the nature of the charge against him. But this evidence of good character, in relation to the particular crime charged, seems to be only admissible in cases where the guilt of the party accused is doubtful. The prosecutor may introduce opposing testimony, and the presumption arising from such evidence of general character is said to be of little weight. 1 Greenl., 65; 2 Starkie, 214; Roscoe, 89.

We shall now pass to the charges given by the court. The first given at the instance, is in these words: "Every homicide is presumed to be committed with malice aforethought; and it devolves upon the prisoner to prove the circumstances which excuse the act." This charge is too broad and unrestricted. It contains only a part of the rule, as usually stated in the books, and omits the important addition, "unless they arise out of the evidence produced against him." 1 Russ., 338; Foster, 255.

Every indictment for murder contains the charge, that the prisoner did "feloniously, wilfully, and of his malice aforethought, kill and murder the deceased." The fact of killing, and the intent, must both concur to constitute the crime of murder. They are both charged by the state, and if, from the whole evidence in the cause, the jury doubt either of the fact of killing, or of the malice of the act, the prisoner is entitled to the benefit of such doubt, and to be either acquitted, or convicted of a crime of less grade than murder, according to the circumstances. The jury must be satisfied, that he is guilty of murder, before they

pronounce him so.   This, by no means, excludes a resort to presumptions in certain cases.   When the fact of killing, with all its attendant circumstances, is clearly proved, and the testimony either shows express malice, or that there was no malice at all, there is no room for presumption.   But in cases where the killing is proved, and no accompanying circumstances appear in the evidence, the law presumes the killing was done maliciously. So, where the killing is proved, and the circumstances attending it are shown, though no express malice may appear from the proof, it may be presumed from some attending fact; as if a deadly weapon were used, the law presumes malice.   So, if there be circumstances of barbarity and cruelty, the law presumes malice.   These presumptions of law, if unopposed, may amount to full proof of the fact.   They stand until the contrary is proved or until such facts are proved, as are sufficient to raise a contrary and stronger presumption.   1 Stark. Ev., 452; Coffee v. The State, 3 Yerg., 283; Woodsides v. The State, 2 How., 666. From the presumptions of law, and the whole evidence in the cause, as well as for the state, as for the accused, the jury must make up their verdict.   In its definition of murder, our statute, instead of "*malice aforethought*," uses the words "*premeditated design*."   In legal effect we regard them as the same.   2 Va. Ca., 88.

The second charge given by the court is in these words: "No trespass upon the personal property of another will authorize the killing of a man; any such killing would be murder, if committed with a deadly weapon."   This charge was correct.   The kind of weapon used in such cases, determines the intent, and fixes the degree of guilt.   If it be a deadly weapon, the killing will be murder.   Commonwealth v. Drew, 4 Mass., 396; State v. Tellers, 2 Hals.; Roscoe Cr. Tr., 718; 2 Stark. Ev., 524.

The third charge given is likewise free from objection.   It corresponds very nearly with the definition of larceny at common law.   To constitute the offense, the goods must have been wrongfully or fraudulently taken and carried away, with the intent to convert them to the taker's own use, and make them his own property.   If there be no such intention, it amounts to a trespass only, and not to a felony.   If the taking be open, and in

the presence of the owner or of other persons, this carries with it evidence, that it is only a trespass. Rosc., 531, 536. The definition in our statute amounts to the same.

The fourth charge, which purports to give a definition of robbery, is not quite full enough. If the goods be taken either by violence, or by putting the owner in fear, it is sufficient to render the felonious taking a robbery. Rosc., 832. To the same effect is our statutory definition.

The fifth charge given on the part of the state, is likewise inaccurate in some degree. It is not enough to do away with the criminal intent, that there should be a mere false claim of property in the article stolen. But, if there be a fair, *bona fide* claim of property or right in the prisoner the offense amounts but to a trespass. Rosc., 537, 829.

The first and third charges asked for by the counsel of the prisoner, have been already sufficiently elucidated in the remarks as to the admission of the dying declarations of the deceased. It is for the court to determine whether, under the circumstances, they are competent testimony; when admitted, it is for the jury to judge of the weight to be attached to them, precisely, as they judge of all other testimony.

The second charge requested on the part of the prisoner was given, and there is no complaint of it.

The fourth charge requested by the prisoner's counsel, was properly refused. It has been sufficiently explained in what has been said of the second charge upon the part of the state. A mere trespass, or a larceny, will not justify an intentional killing. Our statute declares homicide to be justifiable, when committed in resisting any attempt to murder such person, or to commit any felony upon him or her, or upon, or in any dwelling house, in which such person shall be. H. & H., 694.

The fifth and sixth instructions asked on the part of the prisoner were properly refused. They contained mere abstract propositions, bearing but remotely, if at all, upon the case, and their relevancy is not perceived. They propound a rule laid down by Starkie, in reference to cases dependent entirely upon circumstantial proof; a rule, however, which does not apply to a case in which there is *positive* proof.

The seventh charge asked for by defendant, was also properly refused. A portion of it consisted only of abstract propositions, having no perceptible connection with the testimony. If there be any part not liable to this objection, it is that which asks the court to instruct the jury, "that if they believe the deceased had taken the horse of the accused, and was riding him off beyond the reach of probable recapture, and that the accused, after having repeatedly hailed him, slew the trespasser, he is not guilty of murder." If, under such circumstances, the killing was with a deadly weapon, we have already seen it would be murder. We have thus adverted to nearly all the prominent points made in the argument, in order to have the principles settled by which the next trial will be governed.

The judgment is reversed, and cause remanded for another trial.