Robert Lee McFARLAND, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 2–177A33.

Court of Appeals of Indiana,
Second District.

Jan. 22, 1979.

Michael T. Conway, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

McFarland was charged by information with the offenses of attempting to commit a felony (to wit: robbery) while armed[1] and assault with intent to kill.[2] The verdict form indicates that he was convicted of armed robbery[3] and assault and battery.

According to the evidence most favorable to the State, William Kirkland was working behind the counter of his brother's record store when McFarland and another man came in, ostensibly to exchange a record they had purchased earlier. McFarland pulled a gun and pointed it at Kirkland. He then jumped over the counter, grabbed Kirkland, pushed him to the back of the store, and held the gun in his back. When Kirkland "hollered" out to a woman who passed by the store, McFarland shot him and threw him to the floor. McFarland and the other man then ran out the door. Although Kirkland had to receive medical treatment as a result of the shot, no bullet actually entered his body, nor was there any deep breaking of the skin. The investigating officers looked for, but did not find, a shell casing, and the gun itself was never recovered.

On appeal, McFarland alleges:

(1) that the verdict is contrary to law and not supported by sufficient evidence;

(2) that the trial court erred in overruling his motion for judgment on the

---

1. I.C. 35–12–1–1 (Burns Code Ed. 1975) has been repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For the new law, see I.C. 35–41–5–1 and I.C. 35–42–5–1 (Burns Code Ed. 1977 Supp.).

2. I.C. 35–13–2–1 (Burns Code Ed. 1975) has been repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For the new law, see I.C. 35–42–2–2 (Burns Code Ed. 1977 Supp.).

3. The information specified that the defendant "did then and there unlawfully and feloniously, being over the age of sixteen (16) years of age, *attempt* to commit the crime of robbery, a felony, while armed with a dangerous or deadly weapon, to-wit: a handgun . . . in that they did then and there unlawfully, feloniously and forcibly by violence and putting WILLIAM KIRKLAND in fear, *attempt* to take from the person and possession of the said WILLIAM KIRKLAND, U. S. Currency, then and there of the value of FIVE DOLLARS AND NO CENTS ($5.00), in lawful money . . . ." [Emphasis added.] However, the verdict and sentencing were with regard to armed robbery.

evidence at the conclusion of the State's case-in-chief; and

(3) that newly discovered evidence required the granting of a new trial.

We do not find reversible error based upon any of the specifications alleged, but nevertheless remand the cause to the trial court with instructions to correct portions of the judgment and sentencing as discussed in Part IV of this opinion.

## I

McFarland's first specification of error pertains to the sufficiency of the evidence.[4] With respect to his armed robbery conviction, he argues that the State failed to prove he was armed with a dangerous or deadly weapon, to wit: a handgun, as set out in the information. McFarland claims that certain testimony from one of the State's witnesses, on cross-examination, established that the gun in question was merely a blank gun, incapable of expelling a projectile.

The transcript discloses the following testimony from Officer O'Connor:

Q. I'd like to ask you concerning part of the narrative in [your initial report on the incident], where you state in there, "that you believe that the

weapon was a blank gun" . . . Did you put that in the report?

A. Yes, sir, I did.

Q. Why, if any reason, did you put that in there?

A. We, upon the initial examination of the scene, from the description given to my [sic] by Mr. Kirkland, it appeared to be an automatic type weapon which would discharge a shell casing, which I could not find on the scene. As it stated there was no visible hole in Mr. Kirkland's body as though a bullet had entered; but there were powder burns from close range of firing the shot. It could have been direct, it could have been glancing, you know, I'm not an expert of wounds, or that type of thing. But, it appeared to me, definitely to be a gunshot wound of some type.

Q. That's why you put in "possibly" a blank gun?

A. Yes, sir.

■ We disagree, however, with appellant's contention that this testimony precluded the jury from finding that a dangerous or deadly weapon was used. There was sufficient evidence from which the jury could infer that the gun as used had the *actual* ability to cause harm.[5]

4. Appellant, in his brief, treats this specification of error only as a sufficiency of the evidence question.

5. IC 35–12–1–1 (Burns Code Ed. 1975) does not state whether a "dangerous or deadly weapon" refers to the *actual* ability to cause harm or merely the *apparent* ability to cause harm, nor does the statute otherwise define these terms. Our case law offers little, if any, additional guidance. One case appears to suggest that the determinative factor is the apparent ability to cause harm. *Lockridge v. State,* (1977) Ind. App., 359 N.E.2d 589 (pointed object protruding through defendant's t-shirt which appeared to be a weapon but was later discovered to be a meat fork). Other cases, upholding convictions where the defendant merely pointed a gun, might indicate any one of the following: (1) that the apparent ability to cause harm is the determinative factor; (2) that a gun, loaded or unloaded, is a dangerous weapon *per se;* or (3) that the State need only prove a real gun was used, it being incumbent upon the defendant to

come forward with evidence that the gun was in fact unloaded. *Kruckeberg v. State,* (1978) Ind., 377 N.E.2d 1351 (defendant possessed handgun; police agent unaware of its presence); *Cox v. State,* (1978) Ind., 372 N.E.2d 176 (defendant pulled a small handgun); *Rowe v. State,* (1974) 262 Ind. 250, 314 N.E.2d 745 (defendant pointed a .45 calibre automatic pistol). *See also, Asocar v. State,* (1969) 252 Ind. 326, 247 N.E.2d 679 (under prior statute: fact that firearm may not have been loaded does not reduce offense).

For purposes of this case we need not decide these questions, but we do note that there are cogent reasons for following the actual ability to cause harm test. *State v. Matthews,* (1974) Ohio App., 322 N.E.2d 289. *See also,* Annot., 81 A.L.R.3d 1006 and Annot., 79 A.L.R.2d 1412. We note also that the new criminal code does offer more specific guidance by providing that a firearm, loaded or unloaded, is a "deadly weapon" *per se.* See, West's Ann. IC 35–41–1–2 (1978).

Officer O'Connor, while acknowledging the "possibility" that the gun could have been a blank gun, also stated that the victim definitely had a gunshot wound of some type, since there were powder burns and bad abrasions, and that it might have been a glancing rather than a direct shot. Elsewhere in his testimony O'Connor explained why the shell casing might not have ejected from the gun. ("The gun could have jammed; automatics are very temperamental weapons. They must be kept extremely clean to operate properly. A bullet could still be discharged, but say, it's sliding mechanism could have jammed, this [sic] preventing it from ejecting. It's happened many times.") Testimony from the victim, who observed the gun from about a foot away, indicates that it was an automatic. ("I though it was a :45 Automatic but I think it was more like a .38, but I know it was an Automatic.") Kirkland also testified that McFarland held the gun against his back and that, when it was fired, he felt pain. The shot burned a "big hole" in his shirt, and the burn left scars on his back which Kirkland displayed to the jury. In Kirkland's opinion, the gun was not a blank gun.

 Contrary to Appellant's contention, therefore, the record does not disclose uncontroverted evidence that the gun was only loaded with blanks. But even if the jury had determined that it was a blank gun, they still could have found under these circumstances that it was a dangerous, if not deadly, weapon.[6] A blank gun held against the victim's body has the actual ability to cause harm either from its use as a bludgeon or by creating a high flash from the discharge of the blank. *People v. Trice,* (1970) 127 Ill.App.2d 310, 262 N.E.2d 276. *Cf., State v. Luckey,* (1974) Ohio App., 69 Ohio Ops.2d 111, 322 N.E.2d 354.

 Where differing conclusions might be drawn as to whether or not the object is dangerous or deadly, it is a question of fact for the jury to determine from a description of the weapon, the manner of its use, and the circumstances of the case. See, *Kidwell*

*v. State,* (1967) 249 Ind. 430, 230 N.E.2d 590, cert. denied 392 U.S. 943, 88 S.Ct. 2326, 20 L.Ed.2d 1405. We hold that there was sufficient evidence on this issue to sustain McFarland's armed robbery conviction.

 McFarland's other sufficiency of the evidence argument asserts that the evidence failed to support the charge of assault with intent to kill. McFarland, however, was convicted of assault and battery and the essential elements of that offense are: (1) an unlawful touching, (2) of another human being, (3) in a rude, insolent or angry manner. I.C. 35–1–54–4 (Burns Code Ed. 1975). The victim's testimony that McFarland "grabbed" him, pushed him, held a gun in his back, and threw him on the floor is, indeed, sufficient to support a conviction of assault and battery. Any touching, however slight, may constitute an assault and battery. *See, Halligan v. State,* (1978) Ind.App., 375 N.E.2d 1151, 1156–57. See also, Part IV of this opinion.

## II

 McFarland's second specification of error has not been preserved for appeal. Any error in the trial court's overruling his motion for judgment on the evidence at the conclusion of the State's case-in-chief was waived when McFarland elected to proceed with the introduction of evidence in his defense. *Barnes v. State,* (1978) Ind., 378 N.E.2d 839.

## III

 McFarland's last specification of error must fail because his claim of newly discovered evidence is not supported by the requisite factual affidavit. Ind.Rules of Procedure, Criminal Rule 16 and Trial Rule 59(D). *See also, Sanders v. State,* (1977) Ind.App., 370 N.E.2d 966.

## IV

This appeal compels us to dispose of two additional issues, although neither was raised at trial or on appeal.

---

**6.** The statute speaks in the alternative of a "dangerous or deadly weapon."

██ The record plainly discloses that McFarland was convicted of *consummated* armed robbery under an information which charged *attempted* armed robbery. Error such as this cannot be ignored.[7] *See, Sanford v. State,* (1971) 255 Ind. 542, 265 N.E.2d 701, 703, citing *Summers v. State,* (1967) 248 Ind. 551, 230 N.E.2d 320.

██ Conviction of an offense neither charged nor included within the criminal conduct alleged constitutes a denial of due process. *See, Hazlett v. State,* (1951) 229 Ind. 577, 99 N.E.2d 743, 745. Both the Indiana Constitution and the United States Constitution provide that an accused shall be informed of the charges against him. *See, Halligan v. State,* (1978) Ind.App., 375 N.E.2d 1151, 1156, n.3. The defendant is deprived of this constitutional protection if he is convicted of a statutory offense that has one or more additional element or elements which differ from those of the alleged statutory offense. In such cases the judgment of conviction is contrary to law and cannot be permitted to stand. As Judge Garrard explained in *Belcher v. State,* (1974) 162 Ind.App. 411, 319 N.E.2d 658, 660:

(a) an affidavit must charge in direct and unmistakable terms the offense with which the defendant is accused; (b) if there is a reasonable doubt as to what offense(s) are set forth in the affidavit, that doubt should be resolved in favor of the defendant; and (c) where the defendant is convicted of an offense not within the charge, the conviction may not stand for the reason the defendant is entitled to limit his defense to those matters with which he stands accused.

██ The remedy in a number of cases has been to reverse the conviction and remand the cause for new trial. This result is mandated whenever it appears that the defendant has been misled by the evidence introduced at trial or the issues joined under the information have not been determined.[8] *Eq., Sanford v. State,* (1971) 255 Ind. 542, 265 N.E.2d 701; *Bruce v. State,* (1952) 230 Ind. 413, 104 N.E.2d 129.[9] See also, *Pruitt v. State,* (1975) Ind.App., 333 N.E.2d 874.

██ Yet a judgment of conviction which is erroneous in this regard will not always require reversal. Where the defendant has not been misled and it is evident that the

---

7. Attempted armed robbery and consummated armed robbery, although proscribed under one statutory provision, are different offenses. Compare *George v. State,* (1969) 252 Ind. 344, 247 N.E.2d 823 (attempt), with *Heflin v. State,* (1977) Ind., 370 N.E.2d 895 (consummated). We would not have the problem at bar if McFarland had been convicted of attempted armed robbery under a charge of consummated armed robbery. The lesser included offense of attempted armed robbery is embraced within a charge of the greater offense of consummated armed robbery. *Lund v. State,* (1976) 264 Ind. 428, 345 N.E.2d 826. But where, as here, the situation is reversed, a charge of the lesser offense does not include the greater offense and a verdict on the greater offense is erroneous.

8. It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made. *Cole v. Arkansas,* (1948) 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644. See also, *Thompson v. City of Louisville,* (1960) 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654; *DeJonge v. Oregon,* (1937) 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278.

9. In *Bruce v. State,* (1952) 230 Ind. 413, 104 N.E.2d 129, our Supreme Court reversed and remanded the cause for a new trial, stating that a verdict which does not determine the issues joined is contrary to law. The defendant was charged and tried on an affidavit which alleged assault with intent to commit a felony, but was convicted and sentenced for assault and battery with intent to commit a felony. The issue not determined was whether the defendant committed an assault and *battery* with the intent to commit a felony.

The same disposition occurred in *Sanford v. State,* (1971) 255 Ind. 542, 265 N.E.2d 701, where the defendant was charged with the crime of uttering a forged instrument, but was found guilty of forgery "as charged in the affidavit." The Court, citing *Beyerline v. State,* (1897) 147 Ind. 215, 45 N.E. 772, noted that the two offenses are separate since acquittal on a charge of uttering would not bar a subsequent prosecution for forgery involving the same instrument. Hence, the verdict did not determine whether the defendant was guilty of *uttering* the forged instrument.

issues joined under the charging information have been determined, a simple correction of the judgment, rather than reversal, is the appropriate remedy.

In *Belcher v. State, supra,* the defendant entered a plea of guilty to the charge of uttering a forged instrument; yet the order book entry of judgment stated that he was guilty "of the offense of forgery as charged in the affidavit." During the proceedings, the defendant was questioned in reference to the offense charged, had a copy of the affidavit, and discussed it with counsel before entering his guilty plea. Judge Garrard, speaking for the Court, opined that, under these facts, the order book entry of judgment indicating "forgery" was no more than a defect in form and that the defendant had not been misled. The trial judge had apparently referred to the charge as being for "forgery" during the proceedings, but this was not deemed prejudicial since the judge also read the affidavit verbatim. Accordingly, pursuant to Indiana Rules of Procedure, Appellate Rule 15(D) and (M), the judgment was merely ordered corrected.

We find that the logic of Judge Garrard's analysis applies with equal force to the circumstances at bar. In his jury instructions the trial judge read the charging affidavit which alleged that McFarland "did . . attempt to take the value of FIVE DOLLARS AND NO CENTS ($5.00) in lawful money." The instruction defining the elements of the crime followed the language of the statute and used the words, "committed or attempted to commit," interchangeably. Yet the verdict form with respect to IC 35–12–1–1 only referred to the consummated crime of armed robbery. The jury had no alternative, if it were to use the "suggested" verdict forms, but to find McFarland "guilty of COMMISSION OF A FELONY WHILE ARMED, TO WIT: ROBBERY, as charged in the formal accusation," or else return a verdict of acquittal.

In light of the foregoing, we can be assured that the jury made a determination with regard to the offense defined by I.C. 35–12–1–1. The finding of guilty at the very least determined the issues joined under the charge of attempted armed robbery.[10] Nor do we perceive how McFarland could have been misled in his defense, since at trial the State did not introduced evidence of criminal activity unrelated to the offense charged.[11]

■■ We therefore conclude that the judgment on this erroneous verdict need not be reversed, but can simply be corrected to conform with the charge of attempted armed robbery. In accordance with the disposition in *Belcher,* we order that the judgment of conviction be corrected to indicate "Attempted Commission of a Felony While Armed, to wit: Robbery."[12]

10. The evidence of record clearly discloses, if not the completed act, at least an attempt to take money from the cash box. While McFarland held a gun to the victim's back, the victim instructed McFarland's companion on how to open the cash box. But apparently before the money was removed, the victim cried out for help.
 The jury may have determined that the evidence warranted a finding of guilt only as to attempted armed robbery but did not have the appropriate verdict form. Or, the jury may have found that McFarland did, in fact, commit the completed crime, which would also constitute a finding as to attempted armed robbery. We note in this regard that attempted armed robbery is a lesser included offense of armed robbery, it being impossible to commit the greater offense of armed robbery without first having committed the lesser offense of attempted armed robbery. See, *Lund v. State,* (1976) 264 Ind. 428, 345 N.E.2d 826. Indiana

has specifically rejected the Illinois rule which holds that an attempt crime requires proof of an *ineffective act* an element not embraced within the completed offense. *Crump v. State,* (1972) 259 Ind. 358, 287 N.E.2d 342.

11. McFarland could not have been misled by evidence showing a consummated robbery to the extent such evidence was introduced at trial. The only difference between attempted armed robbery, as alleged here, and the completed crime is that the attempt involves an overt act which falls short of an actual taking, whereas the consummated crime involves an effective taking. The difference in criminal conduct is a matter of degree, not substance, and in both offenses the criminal intent is the same.

12. Since IC 35–12–1–1 provides the same penalty for both the completed act and the attempt thereof, and in this case the minimum was

We also find, *sua sponte*, that the judgment of assault and battery is in error. This result is mandated by the Indiana Supreme Court's recent decision in *Elmore v. State*, (1978) Ind., 382 N.E.2d 893.

*Elmore* set aside a decision by this Court that the lesser offense of theft merged into the greater offense of conspiracy to commit theft. The Supreme Court held that, because these were two separate offenses, multiple sentences could be imposed without violating the double jeopardy provisions of either the Indiana Constitution or the United States Constitution.

The Supreme Court took the occasion to review Indiana's "merger" doctrine. Under this doctrine various offenses have been said to "merge" in order to avoid double punishment. The *Elmore* decision made clear that those cases which in the past have used "merger" language should not be interpreted as giving new life to the common law merger doctrine. Rather, the cases must be examined in light of double jeopardy principles. The problem, stated in double jeopardy terms, is whether multiple punishment is being imposed for the *same offense*.

*Elmore* specifically disapproved of any "separate but related rule," for which it quoted the following passage in *Thompson v. State*, (1972) 259 Ind. 587, 591–592, 290 N.E.2d 724, 726–67, as an example: " . . . before the court may enter judgment and impose sentence upon multiple counts, the facts giving rise to the various offenses must be independently supportable, separate and distinct." *Elmore* noted that the result in *Thompson* was correct "not because both counts arose from 'one set of operative circumstances,'" but

because "greater and lesser included offenses are considered the same for purposes of double jeopardy."

Focus on the same operative facts may indeed lead to a result not intended by the double jeopardy clause. The Supreme Court cited *Sansom v. State*, (1977) Ind., 366 N.E.2d 1171, and *Jones v. State*, (1977) Ind., 369 N.E.2d 418, as two cases in which erroneous results were reached. In both, the Court's application of the "same operative facts" test led to the conclusion that a defendant could not be sentenced for both theft and second-degree burglary. As the *Elmore* opinion noted, this result is untenable; it nullifies the obvious intent of the legislature to impose two penalties. In the case of burglary where the intent to commit theft is also consummated, the added punishment for theft serves to vindicate a clearly identifiable interest which is distinct from that covered by the offense of burglary. *Cf. Iannelli v. U. S.,* (1975) 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616. *See also,* Judge Buchanan's dissenting opinion in *Elmore v. State,* (1978) Ind.App., 375 N.E.2d 660, 668–70.

It is important to note that the legislature, generally, has the power to prescribe whatever penalty (or penalties) it deems desirable for a given act or transaction.[13] As stated in *Brown v. Ohio,* (1977) 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187:

> Because it was designed originally to embody the protection of the common law pleas of former jeopardy, see *United States v. Wilson*, 420 U.S. 332, 339–340, 95 S.Ct. 1013, 1019–20, 43 L.Ed.2d 232 (1975), the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The

specified (a determinate period of 10 years), the defendant cannot claim any prejudice with regard to his sentencing. We therefore need only be concerned with the judgment of conviction. *Cf., Lund v. State*, (1976) 264 Ind. 428, 345 N.E.2d 826.

**13.** Many of the problems in the multiple punishment area are in fact due to the increase in the number of statutory crimes, with their attendant overlapping, duplication and repeal by implication.

The most important constitutional limitations on the legislature's power to create crimes are due process and the prohibition against cruel and unusual punishment. A substantive criminal law may also be invalid, or unenforceable as to some fact situations within its terms, because it conflicts with other constitutional guarantees. *See generally*, LaFave & Scott, Handbook on Criminal Law (1972), Ch. 2, §§ 2, 11–12, 18–23.

legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial. [Footnote omitted.]

. . . Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. *See Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Ex parte Lange,* 18 Wall. 163, 21 L.Ed. 872 (1873).

*See generally,* Note, Twice in Jeopardy, 75 Yale L.J. 262 (1965).

 *Elmore* holds that the multiple punishment analysis must begin with the test enunciated by the United States Supreme Court in *Blockburger v. U. S.,* (1932) 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires

proof of an additional fact which the other does not.

This test provides a *constitutional rule* of statutory construction which says: If the "same offense" test is met, it must be presumed that the legislature intended the imposition of only one criminal sanction, *unless a contrary intent is made explicit.* Analogous to a rebuttable presumption, the *Blockburger* test is merely a tool in the constitutional inquiry. *See, Iannelli v. U. S.,* (1975) 420 U.S. 770, n. 17 at 785–86, 95 S.Ct. 1284, n. 17 at 1293–94 (analogizing the *Blockburger* test to Wharton's Rule regarding conspiracy). It does not necessarily end the inquiry nor is it the only means of determining legislative intent.[14]

For example, *Elmore* specifically approved of the line of Indiana cases which have refused to allow "cumulative punishments to be imposed where defendants are convicted of both a greater and lesser included offense."[15] These cases are in accord with *Brown v. Ohio,* (1977) 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187, which held that a lesser included offense and the greater offense are the "same" under *Blockburger.* In the Indiana cases, as in *Brown,* there was no expression of any intent to impose more than one criminal sanction. The Indiana General Assembly has in fact manifested its intent to the contrary. IC 35–8–1A–6 (Burns Code Ed.1975) requires vacation of both the judgment of

---

**14.** In *Prince v. United States,* (1957) 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370, the U.S. Supreme Court found a Congressional intent under the Federal Bank Robbery Act to merge the two offenses of entry with intent to rob and consummated robbery. The Court found that *Blockburger* was not particularly helpful "because we are dealing with a unique statute of limited purpose and an inconclusive legislative history."

**15.** *Elmore* explained "merger" of the underlying felony with felony murder as falling within this lesser included offense analysis.

The "merger" cases involving the offense of automobile banditry constitute another troublesome area, which the opinion in *Elmore* did not resolve. In these cases the judgment of conviction and sentence on automobile banditry was vacated when the defendant was also convicted

of an underlying offense that carried a greater penalty. That is to say, automobile banditry "merged" into its subsidiary felony. *E. g., Mitchell v. State,* (1977) Ind., 366 N.E.2d 183 (rape, robbery, and entering to commit a felony); *Coleman v. State,* (1975) 264 Ind. 64, 339 N.E.2d 51 (armed robbery); *Sutton v. State,* (1966) 248 Ind. 1, 221 N.E.2d 430 (kidnapping). Since *Elmore,* specifically disapproved of the language used in *Coleman,* but not its result, we question whether a lesser included offense-double jeopardy rationale explains "merger" in the automobile banditry situation. Perhaps the result reached in each of these cases is more appropriately explained by the analysis of kidnapping and commission of a felony while armed, as found also in *Coleman v. State, supra. See also, Rice v. State,* (1976) Ind., 355 N.E.2d 238, 239 (DeBruler, J., concurring in result).

conviction and sentencing on the lesser offense.[16]

 We would observe, however, that in other instances the legislature has chosen to punish greater and lesser offenses by pyramiding the penalties. Thus, instead of providing a greater penalty for the more severe offense of using a firearm in the commission of a "crime of violence," the legislature has accomplished the same objective through an enhanced penalty, i. e., by specifying that an enhanced penalty for using a firearm is to be imposed in addition to the penalty for the underlying felony. *See*, IC 35–23–4.1–2 (Burns Code Ed.1975). Such an approach is constitutionally permissible. But the legislature, as it has in IC 35–23–4.1–2, must make its intent explicit in order to "rebut" the *Blockburger* presumption that only one criminal sanction was intended. This enhanced penalty situation is to be distinguished from cumulative punishment.[17] Double jeopardy is no bar to the former; it only forbids cumulative punishment for the same offense. *Brown v. Ohio, supra.*

 We now must determine, in light of the foregoing, whether McFarland's two convictions can be permitted to stand.

McFarland was convicted and sentenced for both attempted armed robbery and assault and battery. The record at bar discloses that the assault and battery upon Kirkland was the means by which McFarland accomplished the "violence" element of attempted armed robbery. Because the evidence that was necessary to prove this statutory element of attempted armed robbery also proved the statutory elements of assault and battery, the latter must be deemed a lesser included offense of attempted armed robbery and the two offenses must be regarded as the same under *Blockburger.*[18]

Nor do we find a legislative intent to impose more than one criminal sanction in this situation. Since the violence element of attempted armed robbery refers to either actual violence or constructive violence ("putting in fear"), the statutory offense covers the harm of assault and battery, when such acts are the means by which a taking is attempted. Unlike the crime of conspiracy to commit theft and the substantive offense of theft which pose distinct dangers, the two offenses here address the same harm stemming from one act. In the case at bar, therefore, we conclude that

---

**16.** Indiana has thereby taken the position that concurrent sentencing can also constitute multiple punishment. *See also, Carter v. State,* (1951) 229 Ind. 205, 96 N.E.2d 273 (defendant's chances of parole may be affected). Accordingly, most of the Indiana cases have specifically vacated the conviction and sentence of the offense which has been found to "merge," even though the two sentences ran concurrently.

We note that the U.S. Supreme Court has never specifically addressed the question of whether concurrent sentences can constitute multiple punishment. *Compare, Benton v. Maryland,* (1969) 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (holding that the existence of concurrent sentences was not a *jurisdictional* bar). The language in a number of opinions suggests that a potential multiple problem arises only when *consecutive* sentences have been imposed. *E. g., Brown v. Ohio, supra,* 97 S.Ct. at 2225.

**17.** IC 35–23–4.1–2 (Burns Code Ed.1975) does not prescribe a new offense. The statute merely imposes additional punishment for certain offenses in which a firearm is used. That is to say, it does not punish for the "crime of violence," only for the use of a firearm in the commission thereof. A similar California provision is discussed in *In Re Culbreath,* (1976)

17 Cal.3d 330, 130 Cal.Rptr. 719, 551 P.2d 23, and *People v. Chambers,* (1972) 7 Cal.3d 666, 102 Cal.Rptr. 776, 498 P.2d 1024.

**18.** It could be argued that since attempted armed robbery only requires proof of "putting in fear," each statutory offense requires proof of facts which the other does not. We disagree. The violence element of attempted armed robbery cannot be "piecemealed" in this manner. Certainly the same result should obtain in a case such as this whether the information charges actual violence (an assault and battery) or merely constructive violence (putting in fear). *Compare* IC 35–8–1A–6 (Burns Code Ed. 1975) which defines a lesser included offense with reference to the evidentiary allegations in the charging affidavit. The prosecutor should not be permitted to secure two convictions, rather than one, through artful drafting of the charging affidavit. As stated in *Brown v. Ohio, supra,* 97 S.Ct. at 2227, "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units."

only one punishment was intended. Accordingly, the judgment of assault and battery and sentencing thereon were erroneous and must be vacated.

This cause is remanded to the trial court for correction of the judgment of conviction as to armed robbery and for vacation of the judgment and sentence for assault and battery. Subject to these corrections, we affirm.

MILLER and SULLIVAN, JJ., concur.