**William Lee HUTCHINSON, a/k/a Richard Lee Vance, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 283S72.

Supreme Court of Indiana.

Sept. 1, 1983.

Rehearing Denied Nov. 18, 1983.

David M. Hamacher, Hamacher & Hamacher, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Richard E. Hagenmaier, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of Robbery, a Class B felony. They also found the appellant to be an habitual offender. He was sentenced to twenty (20) years on the robbery conviction and the sentence was enhanced by thirty (30) years on the finding he was an habitual offender.

■ Appellant was arrested for the armed robbery of a clothing store in Hammond, Indiana. The information and arraignment dealt only with the charge of robbery. On February 10, 1981, the State filed an habitual offender allegation against the defendant. The court ordered the information to be entered. However, due to clerical error, it was not entered upon the order book of the court. The information itself and the minute sheet of the judge are both stamp dated February 10, 1981. The trial judge on April 22, 1983, ordered the information filed as of the February date, *nunc pro tunc*. Defendant went to trial on December 7, 1981. Subsequent to the jury's finding on the robbery charge, in a bifurcated hearing, the defendant was found to be an habitual offender.

Appellant contends the State's failure to amend the original information to include the habitual offender "charge" and to arraign him on the amended information represented fundamental error that violated his "due process rights." Appellant claims the February information was inoperative because it was not entered on the order book. He cites *Blum's Lumber and Crating, Inc. v. James,* (1972) 259 Ind. 220, 285 N.E.2d 822 and *State ex rel. Mammoth v. Superior Court,* (1976) 265 Ind. 573, 357 N.E.2d 732, for the proposition that the court speaks only through its order book. Appellant contends there is only one information on the order book and that is the December 17 information which does not include the habitual offender allegation. He states that to try him as an habitual offender is to do so without any informa-

tion existing. The State maintains that an exception to the general rule exists for actions that occur but for which no entry on the order book exists. It cites *Neuenschwander v. State,* (1928) 200 Ind. 64, 161 N.E. 369. In *Neuenschwander,* the Court recognized that an order book entry could be made *nunc pro tunc* to reflect an occurrence which actually happened. In *Stowers v. State,* (1977) 266 Ind. 403, 363 N.E.2d 978, the Court laid down guidelines to determine what evidence could be used to show when a *nunc pro tunc* entry should be allowed. We said:

"Such entries must be based upon written memoranda, notes, or other memorials which (1) must be found in the records of the case; (2) must be required by law to be kept; (3) must show action taken or orders or rulings made by the court; and (4) must exist in the records of the court contemporaneous with or preceding the date of the action described." *Id.* at 411, 363 N.E.2d at 983.

In the case at bar the tests were met to warrant a *nunc pro tunc* entry into the order book, effective February 10, 1981.

Appellant next suggests such an entry failed to give him formal notice of the additional charge. The State admits this is true. We agree.

■ Appellant's third argument is that the February information, if it has legal significance, did not operate to amend the original information. He cites I.C. § 35–3.-1–1–5 [Burns 1979 Repl.] (repealed by Indiana Acts 1981, P.L. 298, § 9). That statute states in relevant part:

(b) The indictment or information may be amended in matters of substance or form by the prosecutor upon giving notice to the defendant and with the consent of the court, at any time before arraignment. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

(c) Upon motion of the prosecutor the court may at any time before, during, or after the trial permit an amendment to the indictment or information in respect

to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment, the court shall, upon motion by the defendant, order any adjournment or postponement of the proceedings which may, by reason of such amendment, be necessary to accord the defendant adequate opportunity to prepare his defense.

He states sections (b) and (d) require notice to the defendant and an opportunity to be heard in court on the amendment.

This Court has previously indicated that an amendment to an information to add an habitual offender "charge" is based on section (c) not (b) or (d). *Funk v. State,* (1981) Ind., 427 N.E.2d 1081. In a properly held bifurcated habitual hearing as in the case at bar the defendant will receive both notice and hearing. We reaffirm that section (c) is governing to amend an information to add an habitual offender charge.

Appellant claims the failure to formally charge him as an habitual offender and to so arraign him represents a fundamental error and a denial of due process. The argument focuses on the lack of notice of the potential liability as an habitual offender. He calls attention to cases in which defendants were convicted of crimes for which they were not charged. *Addis v. State,* (1980) Ind.App., 404 N.E.2d 59; *McFarland v. State,* (1979) 179 Ind.App. 143, 384 N.E.2d 1104. The Court in both of these cases found this to be a fundamental error and reversed lower court findings. Appellant concedes that the habitual offender allegation is in reality an enhancement of the penalty for the underlying crime. He maintains however that the principles of Constitutional law that govern the criminal process must also govern in this case of enhancement of the punishment. The Court recognized this in the case of *Griffin v. State,* (1982) Ind., 439 N.E.2d 160. *Griffin* held an Intent To Seek

Habitual Offender Notice which did not sufficiently describe the prior offenses that would be the basis for the habitual charge did not meet the procedural safeguards required. The Court reaffirmed that the habitual offender allegation must contain all of the procedural matters and the safeguards of the underlying charge. The purpose is to give the defendant an opportunity to defend himself and to plead to such allegations. Appellant states that if an incomplete information failed in *Griffin* then an absent one must fail here.

The State submits the lack of formal notice did not deprive the defendant of actual notice. It maintains the record shows evidence of the defendant's knowledge of the potential and thus he was not denied a fair trial.

■ The record contains an extensive conversation between the defendant, his counsel, the prosecutor and the judge at the bench. This discussion was on the record but out of the hearing of the jury. The conversation dealt with the defendants desire to take the stand against the advise of counsel. In the discussion the parties spoke of the Kentucky convictions which would be the basis of the habitual charge. The prosecutor noted an habitual offender charge will follow if the defendant is found guilty of the robbery charge. The defendant's own counsel informed the court that the defendant had been informed of all possible consequences of his testimony on his prior crimes. Lastly, the judge in discussion with the defendant noted what is said in the first portion of the trial could be used in the habitual proceeding. The defendant interrupted to say "I knew what it means." There is no doubt that the defendant realized the habitual offender possibility awaited him.

This Court held in *Trotter v. State,* (1981) Ind., 429 N.E.2d 637 the purpose of an indictment is "to furnish the accused with such a description of the charges against him as will enable him to make his defense." *Id.* at 640. Such a purpose of notification has been met in this case. We cannot agree with the defendant that he

lacked the required knowledge to adequately defend himself. The failure of a clerk to make a notation in the order book ten months prior did not cause the defendant to be denied a fair trial.

The State contends the failure of the defendant to object at the onset of the habitual hearing constituted waiver. The appellant contends such a failure to object did not constitute a waiver. It is clear that the defendant, if he really was surprised by the habitual allegation, could have objected and sought continuance in order to prepare a defense. Counsel neither objected nor sought a continuance. He now cites *McFarland, supra,* as authority that in greater offense cases a failure to object did not operate to waive future objections on those grounds. He contends that the jury convicted him of a crime greater than the one under which he was charged and that this type of objection can be raised initially on appeal. This Court has viewed the habitual offender allegation not as an additional charge but as an increase in the severity of the punishment for the underlying crime due to the failure of the effectiveness of prior confinement and rehabilitation. *Funk v. State, supra.* The failure of counsel to take action at the onset of the hearing not only shows their knowledge of the habitual allegation but also bars their subsequent objections.

The trial court is in all things affirmed.

All Justices concur.