Michael Patrick MURPHY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1085S414.

Supreme Court of Indiana.

Nov. 12, 1986.

Kim E. Hall, Smith & Hall, Knox, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Michael Patrick Murphy was convicted after a jury trial of receiving stolen property, a class D felony, Ind.Code § 35–43–4–2(b) (Burns 1985 Repl.). The court enhanced the standard two year sentence by thirty years, the jury having found that Murphy was an habitual offender. Ind.Code § 35–50–2–8 (Burns 1985 Repl.).

In this direct appeal, Murphy asserts as errors:

1) That the evidence was insufficient to sustain a conviction;

2) That evidence obtained from a warrantless search of a vehicle containing a sawed-off shotgun open to view should have been suppressed;

3) That the court should have dismissed the charges against Murphy as a sanction for alleged prosecutorial abuse of discovery;

4) That the filing of the habitual offender information on the day before trial was improper; and

5) That impaneling a new jury to hear the habitual offender evidence after the original jury could not reach a verdict was improper.

Murphy and his two cohorts, William Simpson and Jerry Stahl, were accused of robbing the Five Star grocery store in

Knox of approximately $10,000. They were originally charged with robbery, conspiracy to commit robbery, theft and receiving stolen property.

Simpson and Stahl entered into plea agreements which required that they testify at Murphy's trial. Simpson testified that Murphy and Stahl donned disguises and robbed the store while he drove the getaway vehicle. Simpson also testified that Murphy had helped to plan the crime. However, Stahl testified that Murphy refused to participate in the robbery and had no prior knowledge of the timing of the crime. Further testimony came from two store employees, who said that two men carrying large guns and wearing thick coats robbed the store. Although they could not positively identify Murphy, the employees testified that he resembled one of the robbers.

An informant had told police that Simpson was planning a robbery of the Five Star grocery. Shortly after the robbery occurred, several officers drove to Simpson's home. They found Simpson and Murphy sitting in a parked vehicle. Simpson fled, while Murphy remained at the car. The officers asked Simpson and Murphy to accompany them to the police station for questioning. Both men agreed, but Simpson asked for time to inform his mother. An officer accompanied him inside the home and saw Jerry Stahl. Stahl also agreed to submit to police questioning. The three men left with the police. An officer subsequently searched the vehicle in which Simpson and Murphy were found. He seized approximately $10,000 and several weapons which matched the description of those used in the robbery. This evidence was introduced at trial over the defendant's objection.

The jury began its deliberations about 6:30 p.m. after four days of trial. The trial judge returned the jury to the courtroom shortly after midnight and asked the foreman whether the jury had reached a decision. The foreman said the jury was split about "50–50" and indicated that she was unsure whether additional deliberations

would result in a verdict. The judge, noting that the jurors looked in "good shape," ordered the jury to continue deliberating. At about 1:30 a.m., the jury returned a verdict of guilty on the charge of receiving stolen property and verdicts of not guilty on the other three charges confronting Murphy.

### I. Sufficiency of the Evidence

Murphy claims that the evidence was insufficient to support the jury's verdict on the charge of receiving stolen property. Such a conviction would require proof beyond a reasonable doubt that Murphy knowingly or intentionally received, retained, or disposed of the property of another person that had been the subject of a theft. Ind.Code § 35–43–4–2(b).

Murphy claims that the jury reached a compromised verdict. He contends that the jury must have "ignored" Simpson's testimony that Murphy both instigated and acted in the robbery because it returned a verdict of not guilty on the charges of robbery, conspiracy to commit robbery and theft. Arguing that Simpson's testimony was the only evidence linking Murphy to the robbery, Murphy alleges that a verdict of guilty on the charge of receiving stolen property is inconsistent with the jury's total disregard of Simpson's testimony. In essence, he argues that the jury was obligated to find him guilty of all of the crimes if it believed Simpson or innocent of all of the crimes if it believed Stahl. The verdict of guilty on one charge at 1:30 a.m. after four days of trial and seven hours of deliberations can only be considered a compromise, according to Murphy.

When reviewing a sufficiency claim, this Court will consider only the evidence most favorable to the State and the reasonable inferences drawn therefrom which support the jury's verdict. A conviction will be affirmed if there was evidence of probative value from which the jury could determine that appellant was guilty beyond a reasonable doubt. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Mur-

phy is attempting to impeach the jury's verdict by determining the credibility of Simpson and Stahl. To give credence to his argument, this Court would have to follow a route for which precedent provides a formidable roadblock. We have repeatedly held that this Court on appeal will neither reweigh the evidence nor judge the credibility of witnesses. *Id.*

The evidence most favorable to the State, particularly Simpson's testimony, establishes that Murphy was a willing participant in all of the crimes with which he was charged. However, Stahl testified that Murphy refused to join in the crime. Stahl said he and Simpson dropped Murphy off at a bar immediately before the robbery and retrieved Murphy there shortly afterward. In light of the evidence that Murphy was found in the car which held the ill-gotten gains, the jury could have accepted portions of the inconsistent testimony of Simpson and Stahl and concluded that Murphy was not a participant in the robbery but that he did share in the proceeds. Consequently, while there was evidence to support convictions on all of the charges, the jury concluded that the State met its burden of proof on only one. This was a permissible conclusion.

## II. Warrantless Search

Before Simpson left his home with police, he directed his mother to tell police that he had been home all day. Murphy, meanwhile, insisted on retrieving his jacket from the backseat of the vehicle before leaving. One of the officers shined his flashlight into the backseat and saw a shotgun partially concealed by a jacket. Another officer remained at the Simpson home to guard the vehicle after Simpson, Stahl, and Murphy left for questioning. That officer also saw the shotgun in the car. While he was waiting, the officer determined from his statute book that a felony is committed by possession of a shotgun with a barrel less than eighteen inches in length and with an overall length of less than twenty-six inches. Ind.Code § 35–47–1–10, § 35–47–5–4 (Burns 1985 Repl.).

The grocery store employees had described a sawed-off shotgun when detailing the robbers' weapons to police. The officer radioed his superiors that he believed the shotgun in the vehicle was shorter than the legal length. A few minutes later, without further comment, the officer was ordered to search the car. He confirmed that the shotgun's barrel length was below the legal limit and proceeded to search the rest of the vehicle. In the backseat, he found shotgun ammunition, as well as .44 calibre ammunition. He found .45 calibre ammunition in the glove compartment. From the trunk the officer seized .44 and .45 calibre guns, the money taken in the robbery and a green jacket similar to that worn by one of the perpetrators of the robbery. Murphy and his cohorts later were arrested. The grocery store employees testified at trial that two of the weapons, including the sawed-off shotgun originally spotted in the backseat, were similar to those used in the robbery.

Claiming the warrantless search was in violation of the Fourth Amendment, Murphy filed a motion to suppress the evidence obtained from it. The trial court conducted an extensive pretrial hearing on the motion and ruled that the warrantless search was justified by probable cause and exigent circumstances. The evidence obtained by the search was introduced at trial, and Murphy now challenges its admission. He emphasizes the fact that the prosecutor attempted to justify the search on several inconsistent grounds. However, a party may offer alternative legal theories in support of his position so long as he does not argue inconsistent facts.

The Fourth Amendment protects from unreasonable searches those areas in which a defendant has an actual or subjective expectation of privacy so long as the claimed expectation is one which society recognizes as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979) (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Har-

lan, J., concurring)).[1] Vehicles fall within the protected area, although traditionally the courts have viewed the privacy interest in a car as being less that that associated with homes or offices. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

Warrantless searches are presumed unreasonable, and the State bears the burden of showing that the search is within one of the exceptions to the warrant requirement. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Fisher v. State* (1984), Ind., 468 N.E.2d 1365. One exception allows a warrantless search of a vehicle under exigent circumstances when the officer has probable cause to believe that the vehicle contains the fruits or instrumentalities of crime. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Fyock v. State* (1982), Ind., 436 N.E.2d 1089.

Probable cause exists where the facts and circumstances within the knowledge of the officer making the search, based on reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Probable cause, by its very name, implies probabilities: "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*, 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at 1890.

In this case, the police had probable cause to believe the vehicle contained the fruits or instrumentality of the robbery; in fact, there was probable cause to believe the entire car was an instrumentality of the crime. The officers had received information from an informant that Simpson was planning a robbery of the Five Star grocery. Simpson and Murphy were in the vehicle when police arrived and Simpson fled. Before he left for questioning, Simpson asked his mother to tell police that he was home all day. Murphy was insistent on retrieving a jacket from the vehicle's back seat which held what appeared to be a sawed-off shotgun. Mere possession of that weapon was a crime, and police knew such a firearm had been used in the robbery. The robbers likely had traveled by car because no incriminating footprints were found in the snow, and police were unable to locate the robbers in a search which began only minutes after the crime. These facts support the trial court's finding of probable cause.

The finding of probable cause alone does not relieve police of the requirement of obtaining a search warrant. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The State argues that exigent circumstances existed to justify an immediate warrantless search of the vehicle. Exigent circumstances may be presumed from the fact that an automobile is readily movable and that evidence contained in an automobile can easily be moved or destroyed. *Cochran*, 429 N.E.2d 672.

The presumption of exigent circumstances is especially strong in this case because the vehicle was parked next to the mobile home in which Simpson and his parents lived. A deadly weapon lay in the vehicle. Both the car and the evidence within could easily have been moved by Simpson's relatives. Furthermore, Simpson, Murphy and Stahl were not under

---

1. The seizure of the shotgun, at least, could be justified by the "open view" doctrine. *See, Sayre v. State* (1984), Ind.App., 471 N.E.2d 708. The shotgun was in open view on the seat, and thus the defendant had no legitimate expectation of privacy in the area of the car so clearly visible from the outside. The only questions would be whether the police were in a lawful position when they viewed the shotgun and whether their observation was inadvertent. If so, the seizure of the shotgun did not amount to a "search" within the meaning of the Fourth Amendment. *Cochran v. State* (1981), Ind.App., 429 N.E.2d 672. However, we do not address the application of the "open view" doctrine because we find that the search was justified by probable cause and exigent circumstances.

arrest and could have returned to the home to hide or destroy the evidence before a warrant could be procured. The police were justified in searching the vehicle before they left with the three men.

The finding of exigent circumstances is not affected by the fact that police chose to keep the vehicle within their custody for two hours before searching it. In *State v. Greene*, 285 Or. 337, 591 P.2d 1362 (1979), the Oregon Supreme Court found exigent circumstances justifying a warrantless search where the vehicle was parked on private property and was under police surveillance for two hours before being moved to the police station for the search. Ruling that police appropriately waited to search the vehicle until they believed probable cause was sufficient, that Court dismissed the argument that exigent circumstances did not exist because the police could have attempted to obtain a warrant during the two hours. A similar conclusion was reached by the Fourth Circuit, which said: "If under *Chambers*, an opportunity to obtain a search warrant prior to the seizure of an automobile invalidates its search, the opportunity must be plain and ample. As events develop and new information is received, police officials are not required to hasten to a magistrate when a minimal probable cause showing arguably might have been made." *United States v. Newbourn*, 600 F.2d 452, 457 (4th Cir.1979).

In this case, the police officer at the scene did not cement his belief that the shotgun was illegal until a few minutes before the search began. The officer's reasonable suspicion that the shotgun was sawed-off was crucial to a finding of probable cause; a sawed-off shotgun provided the nexus between the vehicle and the robbery. Therefore, exigent circumstances existed upon the determination of probable cause, despite the delay in searching the vehicle.

We conclude that the combination of probable cause and exigent circumstances justified this warrantless search and that the evidence obtained from it was properly admitted. However, we note that, absent the presence of the sawed-off shotgun, the State would not have been able to justify a warrantless search under these circumstances.

### III. Discovery

Murphy claims that the State willfully abused the discovery process by failing to comply with the court's discovery orders. On several occasions the State failed to meet the court's deadlines for discovery. For instance, the State failed to provide a requested police report until the day of the suppression hearing. On the morning of trial, the State also filed a large amount of discovery material, including the criminal record of the informant whose tip led police to Murphy.

On several occasions, Murphy moved to dismiss the charges, contending that the State's conduct amounted to flagrant abuse of discovery. The trial court denied each motion. Murphy contends that dismissal was warranted because he was irreparably prejudiced; he alleges the State's untimely production of important documents prevented adequate preparation for the suppression hearing or trial.

The purpose of pretrial discovery is to promote justice and to prevent surprise by allowing the defense adequate time to prepare its case. *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142. When the State has violated an order for discovery, a continuance is the normal remedy. *Thorne v. State* (1981), Ind., 429 N.E.2d 644. Murphy did not seek a continuance because he would have thereby have waived his right to an early trial; the trial could not have been rescheduled within seventy days of Murphy's motion for early trial. Ind.Rules of Criminal Procedure, Rule 4(B)(1).

The trial court has the discretion to impose other sanctions, and its ruling will not be reversed absent clear error. "The trial judge is in the best position to determine if any harm has been sustained by noncompliance with an order for discovery. He, likewise, is in the best position to determine

what judicial acts may alleviate or eliminate the damage." *Rock v. State* (1981), Ind., 426 N.E.2d 1320, 1321. The trial court may exclude the undisclosed evidence because of the State's noncompliance with discovery orders, but only when the State's violation evinces bad faith or is grossly misleading. *Chandler v. State*, 419 N.E.2d 142. Dismissal, an even harsher sanction, would require a even stronger showing of prosecutorial abuse of discovery.

The record does not establish prosecutorial abuse so substantial as to require dismissal; therefore, we find no error in the trial court's ruling. Murphy concedes that he received all discovery before the trial began. The prosecutor on several occasions outlined the information to defense counsel when he knew it would be tardy, and several documents simply were not available until after the court deadlines. We note that Murphy has not established that he was unduly prejudiced by the delay in production. Defense counsel was able to delve into the late police report during the suppression hearing and to unmask the informant's criminal record during trial. While the State's compliance with discovery orders was not exemplary, the violation did not evince bad faith or grossly mislead Murphy.

### IV. Habitual Offender Procedure

Murphy alleges several procedural errors which he argues require a reversal of the habitual offender finding. His first claim rests on the State's filing of the habitual offender charge, without objection, the day before Murphy's trial began. Murphy now argues that the late filing prejudiced him and that the State should have been foreclosed from prosecuting him as an habitual offender.

This Court confronted a similar argument in *Wilson v. State* (1984), Ind., 465 N.E.2d 717. The habitual offender charge was filed on the first day of Wilson's trial. He did not seek a continuance. Through discovery Wilson had been provided documentation of the criminal convictions alleged in the habitual offender information.

This Court held that Wilson may have been entitled to a continuance under the circumstances but not to dismissal of the habitual offender charge.

In this case, Murphy did not object to the filing nor did he seek a continuance. He has thus waived the issue. *Locke v. State* (1984), Ind., 461 N.E.2d 1090, 1091. Furthermore, he received documentation of his previous convictions and does not contend that any of the evidence presented at the habitual offender hearing was unknown to him. Murphy does claim that he did not have time to investigate these prior convictions to determine whether there were grounds for collateral attack. However, he does not suggest that those grounds even existed. His bald assertions of prejudice are not sufficient to merit reversal of the habitual offender finding. Thus, following the precedent set by *Wilson*, we find no error.

Murphy next challenges the form of the habitual offender charge. While the habitual offender charge is not a separate offense under Indiana law, it is subject to the rules governing charging of criminal offenses, including Ind.Code § 35–34–1–5(c). *State v. Hicks* (1983), Ind., 453 N.E.2d 1014; *Hutchinson v. State* (1983), Ind., 452 N.E.2d 955. Murphy claims that the State did not seek the leave of the court to amend the information to add the habitual offender count as required by Ind.Code § 35–34–1–5(c), which provides: "Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the accused." The State implicitly moved to add the habitual offender count when it filed the amended information, which was not effective until the trial court accepted it. Therefore, we find no error.

Murphy also contends the State filed the habitual offender count as a "separate and distinct charge," rather than as

an enhancement of the underlying offense. The habitual offender count was typed on a separate piece of paper attached to a page labeled "Amended Information" which recounted the four underlying offenses. The habitual offender charge should always be attached to the original information on a separate page. *Sears v. State* (1983), Ind., 456 N.E.2d 390. The form of the habitual offender charge filed against Murphy was proper.

Next, Murphy contends he was never arraigned on the habitual offender charge. The record establishes that he was.

Murphy's final argument is that the trial court improperly impaneled another jury when the original jury could not reach a unanimous finding. Ind.Code § 35–50–2–8 requires that the same jury which hears the evidence on the underlying offenses be the first to attempt to determine the habitual offender question; however, the statute does not preclude a different jury from determining the issue after the first jury fails to reach an agreement. *State v. McMillan* (1980), 274 Ind. 167, 409 N.E.2d 612.

The judgment of the trial court is affirmed.

GIVAN, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result.