Nov. Term, 1860.

SEYMOUR
v.
THE STATE.

*Per Curiam.* — The judgment is reversed, with costs. Cause remanded, &c.

*M. Jenkinson* and *James Brakenridge*, for appellants.

*L. C. Jacoby*, for appellees.

(1) Petition for rehearing, filed *January* 18, and overruled *May* 10, 1861.

---

## BROWNLEE v. THORNBURGH.

Tuesday, December 11.

---

## SEYMOUR v. THE STATE.

Our statute requiring that where the judge of a Circuit Court is absent for more than three days, his court shall be adjourned until Court in course, only applies to cases where the judge is absent without a regular

Nov. Term, 1860.

SEYMOUR
v.
THE STATE.

adjournment, and does not prohibit an adjournment for more than three days.

If property be taken from the person of another by violence or putting in fear, against the will of such person, such taking is robbery.

As the degree of force, in the taking, necessary to constitute robbery is not described in the statute, it is only necessary that the taking should be by means of force; and where several combine to push one rudely about, and while his attention is thus drawn away, take his money, it is robbery.

APPEAL from the *Marion* Circuit Court.

PERKINS, J.—This was an indictment charging *Seymour* and two others, in one count, with robbing, and in another with stealing over $5 from one *Washington Pettigrew*. The jury, upon the separate trial of *Seymour*, found him guilty of robbery, and fixed his punishment at two years in the State prison. Sentence passed.

On appeal to this Court, two errors are relied on for a reversal of the judgment:

1. That the Court adjourned during the term, before the defendant was tried, for a space of more than three days.

This objection is answered by *Redwine* v. *The State, post*, 293.

We take it, that at common law, a Court would have power to adjourn, for cause, for a longer space, in term, than three days at a time; and where such adjournment appeared to have been made, it would be presumed, the contrary not being shown, that it was made for sufficient cause. And were it made without sufficient cause, it would not, we take it, vitiate subsequent proceedings, but might be ground of accusation against the judge making it. We think our present statute, providing for a close of the term on three days' absence of the judge, does not meet a case like the present; but rather, one where the judge is absent without an adjournment, and his whereabouts or intentions being unknown, it is inferred he has abandoned his Court for the term.

2. It is claimed that the defendant is proved guilty of larceny, and, hence, was erroneously convicted of robbery.

That the defendant got the money of *Pettigrew* is clear enough. That the punishment inflicted is the lowest that could have been put upon him if the jury had placed the

conviction upon the count for larceny, is equally clear; and that the jury might have found grand larceny instead of robbery, we admit. But were the jury not authorized, by the evidence, to conclude that the money was taken through violence, or force? If so, the conviction should be sustained. Our code enacts that, "Every person who shall forcibly and feloniously take from the person of another any article of value by violence, or putting in fear, shall be deemed guilty of robbery." 2 R. S., § 18, p. 402.

"The words of the definition of the crime, are in the alternative, violence or putting in fear; and it appears that if the property be taken by either of these means, against the will of the party, such taking will be sufficient to constitute robbery." U. S. Cr. Law, 458; 3 Arch. Cr. Pl. by Wat. 417, and 418.

If a man, without touching another, threaten to shoot him if he does not give up his money, and it is given up, the money is obtained by fear; but if he seizes him, throws him down, and takes from him his money, it is obtained by violence, where perhaps there is no fear.

In the case at bar, a valuable thing, viz.: $50 in money, was taken feloniously, that is, with intent to defraud the owner of it, and convert it to the use of the taker;—was taken from the person of the owner, and nothing remains to fill the definition of robbery but the force, violence. Was the jury authorized, by the evidence, to find that the money was forcibly, violently, taken? Beyond all doubt, the evidence shows that an assault and battery was committed in taking it. But is not the crime of assault and battery an act of force, violence, in the eye of the law? What constitutes sufficient violence? How much of it must there be to constitute an act, robbery? The statute does not define any particular degree; and we look alone to our statute for crimes, and the definitions thereof. But the common law does not define the quantum of violence. Suppose three men observe a person approaching upon the highway, and agree to take his money from him, if he has any; suppose, as they meet, the three, without saying a word, push the man backward till he is crowded against a fence or a building, and, during the time while his attention is

thus distracted, draw from his pocket his money; how shall

we say the money is taken? Is it taken by force, violence, or how? Take away the violence used in the case, and what other means are left by which the money could have been seized?

Now, in the case at bar, we have this mode practiced, substantially, in abstracting from *Pettigrew* his money. The witness says that, on *September* 28, 1860, he was standing on the steps of the *Bates* House, in *Indianapolis*. There was a mass of people there. He proceeds: "my attention was soon drawn to the defendant and two others by their actions. They seemed to be acting in concert. They would pick a man out and push him through the crowd down the pavement, for some distance, and then let him go and take another, and crowd him back. In doing this, they passed right in front of me, up and down the side walk. They had passed three or four men through in that way before they met the witness, *Pettigrew*. They crowded him from north to south. The defendant was at his back. The one, *Weston*, on the right, and *Morgan* on the left, as they passed me. Mr. *Pettigrew* was turned round so that he faced me. The defendant was then right in front of him; and at that time I saw the defendant take a pocket book from the pocket of *Pettigrew*, and pass it to *Weston*, and then they all left the witness, *Pettigrew*, and disappeared in the crowd." *Pettigrew* says one button on his coat was twisted off, and another nearly so, during the time. Now, if his money was not taken from him by means of violence, force, by what means was it taken? We think the jury were justified in finding the robbery.

*Per Curiam.*—The judgment is affirmed, with costs.

*A. L. Roache*, for appellant.

*W. P. Fishback*, for the State.