[No. 1802]

THE STATE OF NEVADA, RESPONDENT, v. SAVATORE LUHANO AND SERVANTI DAVIS, APPELLANTS.

1. ROBBERY—INDICTMENT—SUFFICIENCY.
   An indictment for robbery, following the definition of the crime as defined by Comp. Laws, 4714, *held* sufficient, under the provisions of section 4200, prescribing the form of indictments to be substantially followed, section 4201, prescribing respects in which an indictment must be direct and certain, section 4208, relating to the sufficiency of indictments, and section 4209, providing for disregarding defects or imperfections in matters of form, not tending to prejudice defendant, and allowing amendments.

2. ROBBERY—ELEMENTS OF OFFENSE—VIOLENCE AND INTIMIDATION.
   It is unnecessary to prove both violence and intimidation; and, if the fact be attended with the circumstance of terror, such threatening word or gesture as in common experience is likely to create apprehension of danger, and induce a man to part with his property for the safety of his person, it is robbery, and it is unnecessary to prove actual fear, as the law will presume it in such case.

3. ROBBERY—EVIDENCE SUFFICIENT TO SUSTAIN CONVICTION.
   In a prosecution for robbery, evidence *held* sufficient to warrant the jury in finding defendant guilty, on the view that the money was taken by intimidation.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *W. H. A. Pike*, Judge.

Savatore Luhano and Servanti Davis were convicted of robbery, and from the judgment and an order denying motion for new trial, defendants appeal. **Affirmed.**

The facts sufficiently appear in the opinion.

*G. W. Shutter-Cottrell*, for Appellants.

*R. C. Stoddard*, Attorney-General, for Respondent.

By the Court, NORCROSS, C. J.:

Appellants were convicted in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, of the crime of robbery. From the judgment, and from an order denying their motion for a new trial, they appeal.

The first contention made by appellants is that the indictment is insufficient to charge the offense of robbery. The

indictment, after entitlement, reads: "The defendants, Sava-
tore Luhano and Servanti Davis, above named, are accused
by the grand jury of the County of Washoe, State of Nevada,
of a felony, to wit, committed as follows, to wit: That said·
defendants, on the 13th day of April, A. D. 1908, or there-
abouts, and before the finding of this indictment, at the said
County of Washoe, State of Nevada, did wilfully, unlawfully,
feloniously, violently, and by force and intimidation, take
from the person of Chervia Lazaro, the sum of $1,000, of
the value of $1,000, lawful money of the United States of
America, which said money was then and there the property
of the said Chervia Lazaro." Robbery is defined by statute
as follows: "Robbery is . the felonious and violent taking of
money, goods or other valuable thing from the person of
another by force or intimidation." (Comp. Laws, 4714.)

We think the foregoing indictment sufficient under the pro-
visions of our statute. (Comp. Laws, 4200, 4201, 4208, 4209.)

The principal contention made by the counsel for appel-
lants is that the evidence does not justify the verdict, in that
it fails to show that the money was taken from the complain-
ing witness, Chervia Lazaro, by force or intimidation. Prior
to the case going to the jury counsel for defendants, appel-
lants herein, requested the court to advise the jury to return a
verdict of not guilty. Judge Pike, who tried the case, being
then of the opinion that the evidence was insufficient to con-
stitute the crime of robbery, advised the jury to acquit the
defendants in accordance with the provisions of section 376 of
the criminal practice act, which reads: "If, at any time after
the evidence on either side is closed, the court deem the same
insufficient to warant a conviction, it may advise the jury to
acquit the defendant. But the jury shall not be bound by
such advice nor shall the court for any cause prevent the jury
from giving a verdict except as provided in sections three
hundred and sixty-one, three hundred and sixty-two, three
hundred and sixty-six, and three hundred and sixty-eight."
(Comp. Laws, 4341.) The jury disregarded the advice of
the trial judge, and returned a verdict of guilty as charged in
the indictment. Upon the same question being presented to
the trial judge on the motion for a new trial, he changed his

opinion as to the sufficiency of the evidence, and denied the motion. It must be conceded that the evidence in this case presents a state of facts which approaches very closely the border line of what is, or what is not, robbery. Upon mature reflection the trial judge reached what we think was a correct conclusion.

All the parties to the crime are Italians, and the complaining witness was unacquainted with the English language, and gave his testimony through an interpreter. It is very clear, from the testimony given, that the two defendants undertook to obtain from the said Lazaro the sum of $1,000 by what may be called a confidence game. After promising him that, if he would procure the sum of $1,000, they would double it for him, and after working upon his credulity, and after supplying him with food and liquor, he was induced to go to their room in a lodging-house in the city of Reno. The sufficiency of the evidence to constitute robbery must be determined upon what transpired within this room. The witness Lazaro testified through his interpreter concerning this portion of the affair as follows:

He (Lazaro) got the $1,000, stopped at Moano Springs, and they got a drink. He came to Reno again and they got him something to eat and drink again. About 2 o'clock they brought him up to a room, and he sat in a chair in the room, and they sat there, too. He said the small gentleman there told him to show him a thousand dollars, and he would double it for him. He said he put his hand up and took it from him, and the other fellow came over at him with a knife in front of him, and he lost his sense. He said he gave him something. * * *

Q. Which one do you say came over after him with a knife? A. The heaviest one.

Q. One of the defendants in this action? A. Yes, sir.

Q. Now, are those the two men that took him up to the room? A. Yes, sir.

Q. And all of your testimony about the two men, you mean the two defendants, do you? A. Yes, sir; them two men there. * * *

Opinion of the Court—Norcross, C. J.

Q. At the time they took this money away from you, what did the money consist of?  A. Gold.

Q. How much?  A. A thousand dollars.

Q. What kind of money?  A. Twenty-dollar gold pieces.

Mr. Ayers—Q. When they came after you with that knife, were you frightened, or were you not frightened?  A. He was frightened.

Mr. Ayers—Q. Did they say anything else to you at the time of taking the money away from you?  A. They told me to keep still.

Q. Did they say anything else?  A. He says they went out the door.  * * *

Mr. Ayers—Q. Where was the money at the time they took it?  A. He said he had it in his pocket.

Q. What pocket?

The Court—Get up and show the jury his pocket.  A. This pocket—the inside coat pocket [shows jury].·

Mr. Ayers—Q. Which one, if either, took that out of there, that money out of that pocket?  A. He said the little fellow.

Q. Did they, or did they not, go immediately out of the door after taking the money?  A. He said they stayed there a little while or a minute, and then they left.  * * *

Cross-Examination:  * * *  Q. Did they show him anything?  A. They did not show him anything in the room; showed him some money at Moano Springs, he said.  * * *

Q. You were pretty well drunk, were you not, at the time you went up to the hotel?  A. No, sir; he said he was not drunk, but he lost a little sense.  * * *

Q. When he gave these men this $1,000, ask him if these men—these defendants—gave him anything in return for it. A. He said they took the money from him.  He did not give it to them.

Q. He did not give it to them?  A. No, sir.  * * *

Q. Where was he sitting, or how was he sitting, and upon what was he sitting, when they took this $1,000 from him? A  He said he sat on a chair.  * * *

Q. Were the defendants in one, too?  A. He said one of them sat down a little.

Q. Which one of them sat down? A. The little fellow. * * *

Q. Now, which one went to him to get the $1,000? A. He said the little fellow came and got the $1,000.

Q. When the little fellow went to him to get the $1,000, whereabouts was the big fellow standing at this time? A. He said the little fellow went to get the money, and the big fellow stood in front of him with a knife.

Q. Now, when he got the money, the little fellow, how did he get it out of his pocket? A. He said he put his hand in his pocket.

Q. You show this jury how that defendant got the money out of your pocket? Tell him to stand up and show them. [Witness stands up and shows the jury.]

Q. Stand up again. Did that defendant walk up to you, like his counsel is now walking up to you, and lift your pocket aside, and reach into your pocket and pull out that money? A. He said they were sitting in front of him.

Q. And how did they reach over—just easily and take the money out of his pocket? A. He said just put his hand in and took the sack.

Q. Ask him what he did then. A. He said that the fellow had a knife in front of him—he was scared—and told him to keep still. * * *

Q. How long were these people in the room after the money was taken? A. He said they just stayed a short time. * * *

The evidence of the complaining witness, Lazaro, was sufficient, we think, to go to the jury, and for it to determine therefrom whether or not the money was taken from him by force or intimidation. The conclusion of the jury that the crime of robbery was established ought not, we think, to be disturbed. Sufficient appears from the evidence to warrant the conclusion that, after the defendants had by false pretenses persuaded Lazaro to procure his $1,000 upon the belief that the defendants would double it for him, and after they succeeded in getting him into a semi-intoxicated condition, and had induced him to go to their room, the false pretenses were abandoned as a means to induce him to give up his money, and the money actually obtained by the smaller of

the two defendants reaching in and taking the sack of gold from Lazaro's pocket while the larger of the two defendants "had a knife in front of him, and told him to keep still"; he at the time being "scared." It is manifest from the evidence that there was not a voluntary surrender of the money by Lazaro, but, upon the contrary, it was taken from him by one of the defendants by force. At the time the money was taken, the jury was warranted from the evidence in concluding that Lazaro was intimidated by the larger of the two defendants, who exhibited in front of him a knife, and told him to keep still.

In *People* v. *Shuler*, 28 Cal. 490, the Supreme Court of California, considering the statute defining robbery · as it then existed in that state, and from which ours was doubtless copied, after setting out the statute, said: "This in no material respect is different from the common-law definition of the crime of robbery."

In *People* v. *Clary*, 72 Cal. 59, 13 Pac. 77, the court said: "Robbery is larceny, with the element of force or intimidation added."

Blackstone says: "Larceny from the person is either by privately stealing, or by open and violent assault, which is usually called robbery. * * * (2) Open and violent larceny from the person, or robbery, the *rapina* of the civilians, is the felonious and forcible taking from the person of another of goods or money to any value, by violence or putting him in fear. * * * (3) Force. Lastly, the taking must be by force, or a previous putting in fear, which makes the violation of the person more atrocious than privately stealing. * * * This previous violence or putting in fear is the criterion that distinguished robbery from other larcenies. * * * Not that it is indeed necessary, though usual, to lay in the indictment that the robbery was committed by putting in fear; it is sufficient if laid to be done by violence. And when it is laid to be done by putting in fear, this does not imply any great degree of terror or affright in the party robbed; it is enough that so much force, or threatening by word or gesture be used, as might create an apprehension of danger, or induce a man to part with his property without or against his consent.

Thus, * * * if a person with a sword drawn begs an alms, and I give it him through mistrust and apprehension of violence, this is a felonious robbery. So if, under a pretense of sale, a man forcibly extorts money from another, neither shall this subterfuge avail him." (2 Cooley's Blackstone, 4th ed. p. 1404.)

"It is unnecessary to prove both violence and intimidation. * * * If the 'fact be attended with circumstances of terror, such threatening word or gesture as in common experience is likely to create an apprehension of danger and induce a man to part with his. property for the safety of his person, it is robbery.' It is not necessary to prove actual fear, as the law will presume it in such a case." (Note by Wharton to text, *supra; State* v. *Burke*, 73 N. C. 83; *McDaniel* v. *State*, 8 Smedes & M. 401, 47 Am. Dec. 93; *State* v. *Howerton*, 59 Mo. 91; *Seymour* v. *State*, 15 Ind. 288; *Evans* v. *State*, 80 Ala. 4; *State* v. *Parsons*, 44 Wash. 299, 87 Pac, 349, 7 L. R. A. 566, 120 Am. St. Rep. 1003; 12 Am. & Eng. Ann. Cas. 61; 14 Am. Cr. Reports, 575.)

We think the evidence in this case was sufficient to warrant the jury finding the defendants guilty of robbery, upon the view that the money was taken from Lazaro by intimidation, and we incline to the opinion that both the elements of force and intimidation are sufficiently established to justify the verdict.

The record contains numerous other assignments of error, but none of them have been mentioned in the briefs filed; and as we find no manifest error in any such assignments the judgment will be affirmed.

It is so ordered.