James W. GARLAND, Appellant,

v.

STATE of Indiana, Appellee.

No. 281S27.

Supreme Court of Indiana.

Sept. 9, 1982.

Eugene C. Hollander, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant James Garland was tried by a jury in the Brown Circuit Court and found guilty of the crimes of criminal mischief, fraud and conspiracy to commit arson. The trial court sentenced him to four (4) years on the criminal mischief conviction, a class D felony, four (4) years on the fraud conviction, a class D felony, and twelve (12) years on the conspiracy to commit arson conviction, a class B felony. All of these sentences were ordered to be served concurrently. Appellant now presents for our review in his direct appeal the following three issues:

1. whether the trial court abused its discretion by denying Appellant's Motion for Separation of Witnesses;

2. whether the trial court's failure to furnish the jury with a verdict form for the lesser included offense of conspiracy to commit criminal mischief was harmful error; and

3. whether there is sufficient evidence to sustain Appellant's convictions.

The evidence produced at trial tended to show that on November 5, 1979, Peggy Goins approached Appellant and solicited him to burn her house down. She told him that her husband had left her and that she needed the insurance proceeds she could collect on the destroyed house. Goins did not tell Appellant that her husband was dead and that his decomposing body was inside the house. Appellant consented to burn the house down but demanded payment of five ($5,000) thousand dollars. Goins agreed to this amount and the two decided that the money would be paid from the proceeds. Appellant also asked Mrs. Goins if she knew where he could acquire a hand gun. Goins responded that she had a pistol in her living room which he could take and keep when he went to burn the house. Appellant and Mrs. Goins originally planned to burn the Goins' house on a Friday night. This was so that Mrs. Goins would have an alibi, since Friday evening was when she regularly bowled. In the evening of Thursday, November 8, 1979, Appellant contacted Mrs. Goins and they drove together to a gas station adjacent to Highway 46. Appellant there obtained a plastic jug from the trunk of his car and filled it with gasoline. They then proceeded to the Goins' house. On the way, Mrs. Goins asked Appellant if they were going to burn the house. Appellant replied that they were. Appellant went into the house, leaving Mrs. Goins in the car. Mrs. Goins testified that he returned approximately five minutes later, laughing and with his shoes on fire. As the two of them drove away from the house, Mrs. Goins noticed flames coming from the living room. Appellant then told Mrs. Goins that she now owed him ten thousand ($10,000) dollars because she had not been "square" with him about "the way things are in that house." Mrs. Goins further testified that at her

husband's funeral, Appellant "put his arms around me and told me to keep my mouth shut and keep cool." Three guns were later found in the home of Appellant's ex-wife. They were identified as owned by the decedent and Mrs. Goins. Mrs. Goins told the police that she had given Appellant permission to have only one pistol. A jug smelling of gasoline and a disposable lighter were found near the burned house.

## I

After the jury was sworn and prior to the calling of any witnesses, Appellant moved for a separation of the witnesses. Both parties had previously indicated in their lists of tentative witnesses that there would be a large number of witnesses at Appellant's trial. In fact, at least 43 people actually testified, 33 on behalf of the State and 10 on behalf of the defense. The trial judge found that because of the limited facilities inside the Brown County Courthouse, it would be impossible for him to maintain the separation of such a large number of witnesses. He accordingly denied Appellant's Motion. The trial court's docket entry states:

"The defendant by counsel moves for separation of the witnesses but the Court notes that the provisions in Nashville, Indiana, as provided by the Brown County Commissioners do not provide for the exclusion of witnesses outside of the court room. Because of the inclement weather it is impossible for them to remain outside or in the narrow hallway on the first floor and therefore overrules said motion."

■ The separation of witnesses is a discretionary matter with the trial judge. We have stated the general rule in Indiana in the following way:

"It is well settled that separation of witnesses at a trial is wholly within the discretion of the trial court as it is required by neither statute nor common law. *Johnson v. State*, (1972) 258 Ind. 648, 283 N.E.2d 532; *Wilson v. State*, (1970) 253 Ind. 585, 255 N.E.2d 817. The court's discretionary rulings in this area will not be disturbed unless there is a manifest abuse of discretion. *Dudley v. State*, (1972) 255 Ind. 176, 263 N.E.2d 161."

*Anthony v. State*, (1980) Ind., 409 N.E.2d 632, 634. *See also: Cox v. State*, (1981) Ind., 419 N.E.2d 737, 739. The purpose of a separation order is to prevent witnesses from changing their testimony according to the questioning and testimony of those preceding them at trial. Trial courts will generally grant a separation order upon the proper motion. We recognize this as a sound practice and encourage it. Although such practice usually leaves us to review only the situation where a trial judge has permitted a witness to testify in violation of a separation order, we find no reason why the rule applicable to the enforcement of a separation order should not also be the rule applicable to the granting of a separation order. A trial judge should have the general discretion to decide on all separation matters because the trial judge has the best and most timely opportunity to make a decision based on the specific facts and circumstances of a given case.

■ The trial judge here found that the facilities available in Brown County were so limited that to grant Appellant's Motion would have required the court to order forty or fifty people to squeeze into one small hallway or else stand outside the courthouse in the snow and cold weather while waiting to give their testimony. The trial judge also found that no other facilities were available to the court which would have made it possible for him to order the separation. It appears that under the peculiar circumstances of this case, the ruling of the trial judge was a reasonable one. We cannot say that he manifestly abused his discretion by refusing to treat forty or fifty citizens in a harsh way. We certainly cannot say that these people would have been better witnesses if they had been so treated. In addition, Appellant points out nothing which indicates that he was unduly prejudiced by the trial court's ruling. A showing of particular prejudice or harm is a mandatory prerequisite to reversal, as we have previously held:

"Error, standing alone, however, does not compel reversal. It must also be shown that the complaining party was harmed by such error, *Layton v. State* (1968), 251 Ind. 205, 240 N.E.2d 489; *Coppenhaver v. State* (1903), 160 Ind. 540, 544, 67 N.E. 453; and that he took the available procedural steps to protect himself against such error. *Sams v. State* (1969), 251 Ind. 571, 574, 243 N.E.2d 879; *Hensley v. State* (1969), 251 Ind. 633, 244 N.E.2d 225; *Lewis v. State* (1969), 252 Ind. 454, 460, 250 N.E.2d 358; *Tyler v. State* (1968), 250 Ind. 419, 236 N.E.2d 815."

*Johnson v. State*, (1972) 257 Ind. 682, 685, 278 N.E.2d 577, 580. Absent such showing of harm and having found no manifest abuse of discretion by the trial court, we find no reversible error in the trial court's denial of Appellant's Motion.

### II

 Appellant next claims that the trial court erred in not tendering to the jury a verdict form allowing it the option of finding Appellant not guilty of conspiracy to commit arson but guilty of conspiracy to commit criminal mischief. Count I charged Appellant with arson, for which criminal mischief is a lesser included offense. On this count, the jury was instructed on arson as well as on criminal mischief. Count III charged Appellant with conspiracy to commit arson, for which conspiracy to commit criminal mischief is a lesser included offense. On this count, the jury was originally instructed only on conspiracy to commit arson. The jury was additionally instructed, however, that: "a conspiracy to commit a felony is a felony of the same class as the underlying felony." During its deliberation, the jury sent to the court a question about count III. Specifically, the jury asked: "Does the class of the conspiracy charge III depend upon the class finding of charge I?" With the agreement of both parties, the trial court responded to the jury's question by submitting to it an Amended Final Instruction No. 5. This instruction told the jury that with respect to count III, it could find Appellant: not guilty, guilty of conspiracy to commit arson,

a class B felony, or guilty of conspiracy to commit criminal mischief, a class D felony. For no apparent reason, a verdict form was not given to the jury providing for the possible verdict of not guilty of conspiracy to commit arson but guilty of conspiracy to commit criminal mischief. The jury found Appellant not guilty of arson as charged in count I, but guilty of the lesser included offense of criminal mischief. For count III, it found Appellant guilty of the offense of conspiracy to commit arson as originally charged.

When this cause was submitted to the jury for deliberation, Appellant made no objection to the tendered verdict forms. Further, Appellant agreed to Amended Instruction No. 5, given to the jury to inform it that Appellant could be found guilty of the lesser included offense of conspiracy to commit criminal mischief. When the jury returned its verdicts, Appellant again made no objection. Finally, Appellant never tendered his own verdict form in an attempt to correct the situation he now complains of.

Two days after the conclusion of Appellant's trial, Appellant and the State together had filed a "Joint Petition to Enter Judgment on Jury Verdicts, Proceed with Sentencing and Discharge Jury." At this time there was pending before the trial court a charge to have the Appellant adjudged a habitual offender. A portion of the Joint Petition is as follows:

"It is understood by the defendant and his counsel that the defendant waives any objection he might have to the court's failure to amend its Final Instruction number 32 to provide an additional verdict form as to Count III and referred to above and with the full knowledge he now faces a possible penalty to from six to twenty-eight years to be determined by the court after a sentencing hearing. It is further understood that the State of Indiana waives its right to proceed against this defendant in this cause with the additional count of being an habitual offender as set forth in Count V."

The trial court accepted the Joint Petition as requested by the parties. Accordingly,

the habitual offender charge was dismissed and the trial court entered judgment on the verdicts and thereafter sentenced Appellant.

Appellant now contends that he could not waive an error that had already been committed. He suggests that "Once the error had occurred, it was not possible to correct it." We disagree. Since the jury was still present to try the habitual offender count, correction of the verdicts was still before the court as well. The trial court had not yet accepted the verdicts of the jury. By filing their Joint Petition to waive these issues at a time when the trial court could still have properly dealt with them, neither party can now claim error. In *Grimm v. State*, (1980) Ind., 401 N.E.2d 686, 687, we held on this matter as follows:

> "[T]he trial judge has a duty to send the jury back to correct a defective verdict before that verdict is accepted and the jury discharged. It is also true, however, that defense counsel has a duty to raise such a question when it becomes apparent."

If there was any error here, the parties invited it themselves. We find no reversible error on this issue.

### III

Finally, Appellant claims that there was not sufficient evidence presented to the jury from which they could rightly find beyond a reasonable doubt that he was guilty of the crimes of criminal mischief, conspiracy, and fraud. The evidence showed that the Goins' house was burned down by using a cigarette lighter to ignite gasoline which had been poured throughout the living room. The Goins owned a fire insurance policy providing them with approximately fifty-four thousand ($54,000) dollars in the event their house was destroyed. Peggy Goins filed a claim against her policy the next day after the fire. Appellant was fully implicated by Peggy Goins' testimony as we have above set out. Also, three guns from the Goins' house were found in the home of Appellant's ex-wife, having been placed there by Appellant. Appellant testified that although Mrs.

Goins had given the guns to him, they had nothing to do with the burning down of her house. Peggy Goins disagreed with Appellant and stated that she did not even know that he had removed the guns from her house. There was sufficient direct evidence from which the jury could reasonably find that Appellant committed the crimes for which he was charged and convicted. There remains only the question of the credibility of the witnesses and that, of course, is within the province of the trier of fact and not for this Court to reweigh. We find no error on this final issue.

The trial court is in all things affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.