Garrett ROWE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–385A81.

Court of Appeals of Indiana,
Second District.

Aug. 18, 1986.

Michael H. Duckett, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant-appellant Garrett Rowe (Rowe) appeals his conviction of armed robbery, a class B felony.[1]

On January 26, 1984, Joe Mansfield was carrying a grocery sack containing cash through the parking lot of the grocery store where he was employed. A man later identified as Rowe came from behind Mansfield, grabbed the sack and ran. Mansfield gave chase. Mansfield did not see the robber's face. At trial, Mansfield said he was never in fear, never saw a gun,

---

1. Ind.Code Ann. § 35–42–5–1(2) (Burns Repl. 1985).

and did not physically wrestle with the robber.

James Strean saw the incident and identified Rowe as the robber. Strean testified Mansfield and Rowe "tussled" a bit before Rowe made off with the sack containing the cash. David Dalton, another employee of the grocery, also observed the incident and answered affirmatively when asked if he was placed in fear by Rowe's actions. Wilma Burkes and Jo Modglin, also store employees, observed a gun, scarf, and cap in the area immediately following the incident.

Trial to a jury began on October 19, 1984. During the first day of trial, police officer Jerry Golden testified the fingerprint he obtained from the gun allegedly used in the incident matched Rowe's. The fingerprint comparison was made using a fingerprint card Golden made of Rowe during an earlier and separate routine booking. Also on the first day of trial, defense witnesses Tony Johnson, Roman Johnson, and Steven Hughes were presented out of order. Each man testified Rowe was in Evanston, Illinois on January 26, 1984, the day of the incident.

Following a weekend recess, the State sought to amend its witness list to include Patricia Grile and her daughter, Michele Grile. The Griles contacted the State over the weekend after they read about the trial in a newspaper and realized they had observed the incident. When Rowe sought to exclude their testimony, the trial court granted a one day continuance. The next day, after an opportunity to speak with the Griles and review their expected testimony, Rowe renewed his motion to exclude their testimony. When that motion was denied, Rowe moved for a one month continuance which was also denied. The court also rejected Rowe's argument allowing the Griles to testify would violate the court's order for the separation of witnesses.

On direct examination, Patricia Grile testified she became aware of her unique knowledge of the incident when she read a newspaper account of the difficulty the State was having connecting Rowe with the gun. Patricia stated neither the newspaper article nor her contact with the prosecutor's office influenced her story in any manner. Further, both Patricia and Michele Grile admitted talking to a police officer over the weekend, but both stated the officer told them nothing about the case.

In testifying about the occurrence, Patricia related "the man on the corner come up to the stock boy and started wrestling with him. And as he threw the stock boy to the ground and he turned to run away, I saw a gun fall on the ground." *Record* at 402. Patricia stated she also saw a hat and scarf fall to the ground at the same time and that all three items fell in front of the door to the grocery store. Michele testified she heard something, turned around, and saw the gun on the ground and the robber running off.

Cheryl Graves and police officer Joe Rowe, who is Rowe's uncle, testified they observed Rowe in the city on the day of the robbery. Jackie Cole denied seeing Rowe on the day of the robbery and recanted her earlier statements to the contrary. After recalling Mansfield and Strean, Rowe took the stand in his own behalf. He claimed he was in Evanston, Illinois on the date of the incident. He further explained his fingerprint was found on the gun because the gun belonged to Eddie Grayson, and Grayson recently had attempted to sell the gun to him. At the conclusion of the trial, Rowe objected to the court's final instruction which recited the charging information filed against Rowe. That instruction was read to the jury over Rowe's objection along with an instruction which stated, in part, "(t)he charge which has been filed is the formal method of bringing the defendant to trial. The fact that a charge has been filed, the defendant arrested and brought to trial is not to be considered by you as any evidence of guilt." Record at 98. The jury was also instructed it must consider the instructions as a whole. The jury found Rowe guilty of armed robbery, a class B felony.

Rowe was sentenced on November 20, 1984. At the sentencing hearing, several witnesses testified on Rowe's behalf; however, the court imposed the presumptive ten year sentence. In so doing, the court stated:

"The Court finds that there is an aggravating circumstance in this case concerning the defendant's prior criminal activity. And that there is a mitigating circumstance in this case being the young age and the likelihood of the defendant to respond to rehabilitative efforts. The Courts finds that these aggravating and mitigating circumstances offset one another. The Court enters an executed sentence of 10 years pursuant to statute against the defendant."

Record at 735–36. This appeal ensued.

### Issues

Rowe presents six issues for our consideration:

1. Did the trial court err by denying Rowe's motion to exclude the Griles's testimony because of a violation of its separation of witnesses order?

2. Did the trial court err by denying Rowe's motion for a continuance?

3. Did the trial court err by admitting evidence regarding Rowe's fingerprints?

4. Did the trial court err by rereading the preliminary instruction reciting the charging information filed against Rowe as a final instruction?

5. Is the evidence sufficient to sustain Rowe's conviction?

6. Did the trial court abuse its discretion by imposing the presumptive sentence for robbery?

### I. Separation of Witnesses

■ The trial court did not err by denying Rowe's motion to exclude the Griles' testimony based on a violation of its separation of witnesses order. The admission or exclusion of testimony of a witness who has violated a witness separation order, absent connivance or collusion by the party calling the witness, rests within the sound discretion of the trial court. *Drake v.*

*State* (1984), Ind., 467 N.E.2d 686; *Murphy v. State* (1985), Ind.App., 475 N.E.2d 42. "The purpose of a separation order is to prevent witnesses from changing their testimony according to the questioning and testimony of those preceding them at trial." *Garland v. State* (1982), Ind., 439 N.E.2d 606, 608.

[2] There is no evidence of collusion on the part of the State. The Griles were unknown as witnesses until they came forth *during* ■■ ■■ They were not technically witnesses under the separation order, and Rowe has shown no "functional violation" of the separation order which would merit exclusion of their testimony. Both Patricia and Michele testified the newspaper article did not influence their recitation of the facts at trial. Additionally, Patricia and Michele were extensively cross-examined about their motivation for coming forth and their recall of the facts surrounding the incident. This cross-examination ensured that the jury was aware of the circumstances which gave rise to their testimony. Thus, under the particular circumstances of this case, there has been no abuse of discretion. *Cf. Steele v. State* (1985), Ind., 475 N.E.2d 1149 (no abuse of discretion on part of trial court in allowing a witness who unknowingly violated the separation of witnesses order to testify).

### II. Motion for Continuance

■ The trial court did not err by denying Rowe's motion for a continuance. The denial of a continuance is error only if the trial court has abused its discretion. *Montano v. State* (1984), Ind., 468 N.E.2d 1042. A showing the defendant was prejudiced by the denial of the continuance is a prerequisite to establish an abuse of the trial court's discretion. *Hunt v. State* (1983), Ind., 455 N.E.2d 307; *see also Montano.*

■ Rowe has shown no prejudice as a result of the denial of his requested one month continuance. The trial court granted a one day continuance to provide Rowe an opportunity to examine the Griles and there is no showing counsel would have

been better prepared concerning their testimony had he been granted more time. As it was, Rowe's counsel extensively and effectively cross-examined both of the Griles. Further, although Rowe claims he was prejudiced because he was already committed to his alibi defense when the Griles's testimony was revealed, there was testimony from Burke and Modglin placing the gun at the location of the incident *prior* to the Griles testimony.

The trial court did not err in denying Rowe's motion for continuance.

### III. Fingerprint Evidence

The trial court did not err by admitting evidence regarding Rowe's fingerprints despite his assertion an adequate foundation to establish the relevancy and materiality of that evidence was absent.

"It is well-settled that before an exhibit is admitted into evidence, a foundation must be laid to establish its relevancy and materiality. Evidence having some tendency to prove a material fact is relevant and, to show a proper foundation for admission, it is only necessary to show that an exhibit is connected to the defendant and is properly identified."

*Baker v. State* (1984), Ind., 470 N.E.2d 346, 348. The trial court is afforded wide latitude in ruling on these matters and will be reversed only for an abuse of discretion. *Grimes v. State* (1983), Ind., 450 N.E.2d 512.

■ An adequate foundation existed to establish the relevance and materiality of the evidence regarding Rowe's fingerprints on the weapon found at the scene of the crime. Two witnesses, Burkes and Modglin, had testified about the presence of the gun at the scene of the crime, and Strean had identified Rowe as the person he saw commit the robbery. Golden testified concerning his analysis which revealed Rowe's fingerprint on the weapon Burkes and Modglin observed at the scene of the crime. Therefore, the exhibit was properly identified and was connected to Rowe.

■ Rowe's assertion a foundation did not exist for the fingerprint card used for comparison with the fingerprint on the gun also is refuted by the record. Golden testified he personally made Rowe's fingerprint card during routine processing at the jail. The evidence was relevant and material.

### IV. Reading Information

■ Rowe argues the trial court erred in rereading to the jury as a final instruction the preliminary instruction which recited the charging information. He argues the final instruction does not contain a principle of law necessary to the jury to arrive at its verdict, and further, the instruction is prejudicial in that it emphasizes the fact a charge has been filed and allegations made against Rowe. The trial court did not err in this matter.

Rowe correctly argues the purpose of final instructions is to advise the jury of the law applicable to the facts which it may find in order to reach a just and fair verdict. *Hackett v. State* (1977), 266 Ind. 103, 360 N.E.2d 1000. However, a defendant may only be convicted of an offense charged and in the manner it is charged. Thus, the jury must be advised of the particulars of the charge, as, for example, the name or identity of the victim. Here that function was performed solely by the instruction under attack. Therefore, it was an appropriate instruction and was not rendered inappropriate because it also reminded the jury of the fact a charge and allegations had been made against Rowe. Rowe's presence before the jury constantly and continuously performed that function to the extent another reminder in the form of an instruction could not have a prejudicial impact. In addition, the jury was specifically instructed the filing of a charge is not evidence of guilt and the instructions were to be considered as a whole.

The trial court did not err by rereading as a final instruction the preliminary instruction which recited the charging information filed against Rowe.

### V. Sufficiency of the Evidence

■ Rowe argues his conviction is erroneous because the evidence is the sack was taken from Mansfield without force or the

threat of force and without the use of a deadly weapon. The State counters with the argument there is evidence from which the jury could reasonably infer Mansfield was put in fear and, in any event, the statute was satisfied when Rowe placed an employee other than Mansfield in fear.[2]

Construing the evidence most favorably to the judgment, the evidence is indeed sufficient to sustain Rowe's conviction for robbery by force had it been charged. The evidence is Rowe "took" the sack of money from Mansfield's arms as the result of a "tussle" and at a time when Rowe was armed with a gun, a deadly weapon, as evidenced by the fact it fell from his person onto the ground.

However, Rowe was charged[3] with the crime of robbery by putting in fear as opposed to robbery by force.[4] The issue, then, is whether the evidence is sufficient for a fact finder to reasonably conclude, beyond a reasonable doubt, Mansfield relin-

quished custody of the sack of money because he was put in fear.

Mansfield testified Rowe came from behind, took the sack and ran. He denied he physically wrestled with Rowe. In fact, he stated it happened so quickly he did not see the robber's face, he did not know the robber's race or sex, he did not see a gun, and he was not afraid. However, in contradiction of Mansfield's testimony, a witness to the parking lot incident testified Rowe and Mansfield "tussled" a bit before Rowe made off with the cash sack. This testimony is critical because, under existing supreme court precedent, it provides a basis for the fact finder's determination Mansfield was not only "put in fear" but, in addition, relinquished custody of the sack due to that fear.

In *Baker v. State* (1980), 273 Ind. 64, 402 N.E.2d 951, our supreme court held a fact finder could reasonably conclude fear existed from the circumstances surrounding an incident despite the victim's contrary pro-

2. Because we hold there is sufficient evidence to sustain Rowe's conviction on the theory Mansfield was put in fear we do not reach the State's second argument. Nevertheless, we would disagree with the State's argument for two reasons. First, the charging information specifically alleged Rowe committed robbery by "putting ... Joe L. Mansfield in fear...." Record at 97. Secondly, there must be a causal relationship or nexus between the act of putting a person in fear and the victim's decision to surrender the property. For example, if a person pointed a gun at a person other than the victim, and threatened to shoot that person if the victim did not surrender the property, a robbery by placing a person in fear would have been accomplished because the threat against the third party caused the victim to give up the property; but, a robbery by fear is not accomplished when a bystander is afraid if that bystander's fear did not contribute to the victim's surrender of the property. Here, a nexus did not exist between the fear of the other employee and Mansfield's relinquishment of the bag of money. Therefore, that evidence is insufficient to sustain a conviction of robbery by "putting someone in fear."

3. The body of the information reads:
"R.W. Mercer swears he is informed and believes that ... Garrett Rowe on or about the 26th day of January 1984 at and in the County of Delaware, State of Indiana, did then and there unlawfully and knowingly take Unites

[sic] States currency from the person of Joe L. Mansfield, an employee of Wise Food Co. 1900 N. Walnut St. Muncie, Indiana, by putting said Joe L. Mansfield in fear, while armed with a deadly weapon, towit [sic]: a handgun, said United States currency being the property of Wise Food Co. 1900 N. Walnut St. Muncie, Indiana."
Record at 10.

4. Ind.Code Ann. § 35–42–5–1 (Burns Repl. 1985) provides robbery may be accomplished by force *or* by putting in fear. In *Hazlett v. State* (1951), 229 Ind. 577, 99 N.E.2d 743, the supreme court, construing a predecessor statute, noted the difference between a taking by violence and by putting in fear: "If a man, without touching another, threatens to shoot him if he does not give up his money, and it is given up, the money is obtained by fear; but if he seizes him, throws him down, and takes from him his money, it is obtained by violence, where perhaps there is not fear." 229 Ind. at 585, 99 N.E.2d 743 *quoting Seymour v. State* (1860), 15 Ind. 288, 290.

The State, even when it charges both alternatives, is not required to prove both. *Wash v. State* (1980), Ind.App., 408 N.E.2d 634; *Booker v. State* (1979), 270 Ind. 498, 386 N.E.2d 1198. Thus, arguably the taking of property from the presence of a person by force and the taking of property from the presence of a person by fear are different, distinct and alternative elements of the offense of robbery.

testation. In affirming the robbery conviction in *Baker* our supreme court stated:

"It is well established that it is not necessary for the victim to testify that he was actually put in fear. There need only be evidence from which the jury can infer that the victim was put in fear.

In this case, the evidence showed that two of the robbers were holding guns on the victims. Mrs. Thomas acted as she was ordered to by the gunmen in opening the cash register and then standing still and not turning around. She did nothing to prevent the money from being taken. The three other employees testified that they were afraid during the robbery. This was substantial evidence of probative value from which the jury could infer that Mrs. Thomas surrendered the money because she was afraid."

402 N.E.2d at 953 (citations omitted). Under *Baker*, the evidence Rowe and Mansfield tussled reasonably supports the fact finder's conclusion Mansfield was put in fear by the confrontation with Rowe despite Mansfield's contrary protestation.

Then, in *Maul v. State* (1984), Ind., 467 N.E.2d 1197, our supreme court implicitly held the fear which must at least contribute to a victim's relinquishment of custody need only instanteously coincide with the force by which the property is also, and perhaps primarily, obtained. Writing for a unanimous court, Justice Hunter observed:

"The evidence here shows that the victim was a sixty-five year old woman who was approached suddenly from the back. Her purse was pulled off of her arm with such force that her shoulder became sore. The unexpected use of force directed against the victim would be sufficient evidence from which the trier of fact could infer that the victim did experience fear."

Applying *Maul* to the instant facts, we must conclude Mansfield's "tussling" with Rowe also reasonably supports the fact finder's conclusion Mansfield struggled to retain possession of the sack *and,* during that struggle, was in fear.

Judgment affirmed.

BUCHANAN, C.J., concurs in result.

SULLIVAN, J., dissents, with separate opinion.

SULLIVAN, Judge, dissenting.

I respectfully dissent.

I do not believe that there is any evidence of record from which a reasonable trier of fact could conclude that Mansfield relinquished the sack because he was put in fear. It must be remembered that such element was essential to the offense as charged.

It is not sufficient that some person other than the possessor of the property was put in fear. In this respect I agree with footnote 2 of the opinion of Judge Shields.

The evidence below shows, at most, a momentary "tussle." While that evidence may show that the sack was obtained as a result of that tussle, i.e., as a result of force, it does not permit an inference that Mansfield was in fear and that, as a result of the fear, relinquished the sack.

It should not be our prerogative to rephrase the charge so as to fit the offense to the evidence. That prerogative belongs to the prosecuting attorney. When the offense as charged is not proved, there should not be a conviction of that charge. *Sanford v. State* (1971) 255 Ind. 542, 265 N.E.2d 701; *McGuire v. State* (1875) 50 Ind. 284; *McFarland v. State* (1979) 2d Dist. 179 Ind.App. 143, 384 N.E.2d 1104.

I would reverse with instructions to vacate the robbery conviction, to enter a conviction of theft, and to resentence Rowe accordingly.