## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 26 2016, 5:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen Celestino-Horseman
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

D.T.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

August 26, 2016

Court of Appeals Case No.
49A02-1509-JV-1528

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Scott Stowers, Magistrate

Trial Court Cause No.
49D09-1505-JD-850

**Najam, Judge.**

# Statement of the Case

D.T. appeals his adjudication as a delinquent for robbery, as a Level 5 felony if committed by an adult, following a bench trial. On appeal, D.T. raises four issues, which we consolidate and restate as the following two issues:

1. Whether his confession was inadmissible because he did not knowingly or voluntarily waive his *Miranda* rights.

2. Whether the State presented sufficient evidence to support his adjudication as a delinquent for robbery.

We reverse and remand with instructions.

# Facts and Procedural History

On May 12, 2015, Morgan Edwards was working as a technician at a CVS pharmacy in Indianapolis. At approximately 11:56 a.m., an African-American male wearing a black hoodie with the hood up walked up to the pharmacy counter and began knocking his knuckles against the counter to get Edwards' attention. Edwards walked to the counter and said, "Can I help you?" Tr. at 15. The male, later identified as D.T., did not speak but slid a folded-up note over to her. Edwards picked up the note without reading it and gave it to the pharmacist, Charles Elroy. Edwards then stood by the safe, out of the pharmacist's way.

In addition to being the pharmacist, Elroy was also the pharmacy manager. As such, he was the only individual at the pharmacy that day who had access to

the codes to the safe. When Elroy saw an African-American male in a hoodie approach the pharmacy drop-off counter, he immediately thought the individual was there to rob the pharmacy. As D.T. approached the counter, Elroy was on the telephone but reached into his pocket to make sure he had the paper with the codes to the safe. After Edwards brought Elroy the note, he did not read it but opened the safe, grabbed eight or nine bottles of prescription medicine, dropped them into a plastic bag, and handed the bag to D.T. D.T. ran out of the store, not knowing that the bottles contained a tracking device. A pharmacy technician called 9-1-1.

[5] Indianapolis Metropolitan Police Department ("IMPD") Officers responded to the 9-1-1 call, interviewed Edwards and Elroy, reviewed the CVS surveillance video, and obtained the paper D.T. had handed to Edwards. The paper stated "This is a robbery . . . " and demanded medication. State's Ex. 5. By following the tracking device in the bottles, IMPD officers then apprehended D.T. approximately nine blocks away from the CVS.

[6] After D.T. was arrested, Sergeant Brent Hendricks of the IMPD interviewed D.T. at the police station, and that interview was video-taped. Before the interview, Sergeant Hendricks allowed D.T. to consult privately with his mother. After D.T. and his mother consulted, Sergeant Hendricks provided D.T. with a "juvenile waiver form" that stated D.T.'s *Miranda* rights. Tr. at 55; State's Ex. 8. Sergeant Hendricks also read the juvenile waiver form out loud to D.T., and he then indicated the lines where D.T. should sign. While D.T. looked at the waiver form and while the video camera continued to record both

visual and audible audio, Sergeant Hendricks stepped out of the room for eight seconds. State's Ex. 10 at 3:55:17-25.[1] D.T. signed the waiver form. D.T. was not offered an opportunity to consult with his mother after he was told his rights and before he waived those rights. D.T. subsequently confessed to the robbery.

[7] On May 12, the State charged D.T. with count I, robbery by force or threat of force, pursuant to Indiana Code Section 35-42-5-1(1). On July 10, the State charged D.T. with count II, violation of release of conditions, pursuant to Indiana Code Section 31-37-6-6(d). On July 22, the State charged D.T. with count III, robbery by putting any person in fear, pursuant to Indiana Code Section 35-42-5-1(2). The latter charge specifically stated:

> On or about the 12th of May, 2015, [D.T.] did knowingly or intentionally take property, to wit: various prescription narcotics, from the person or presence of Morgan Edwards, by putting Morgan Edwards in fear.

Appellant's App. at 69-A.

[8] On July 30, following a hearing, the trial court adjudicated D.T. a delinquent child under count III. However, the trial court dismissed count II, and it took under advisement a motion to dismiss count I. On September 2, 2015, the trial court dismissed count I. This appeal of the count III conviction ensued.

---

[1] The State's contention that Sergeant Hendricks left D.T., "his mother and his grandmother in the room with the waiver form for approximately 15 seconds by themselves," Appellee's Br. at 11, is inaccurate.

# Discussion and Decision

## *Issue One:  Waiver of* **Miranda** *Rights*

[9] D.M. first contends that his waiver of his *Miranda* rights is not valid and, therefore, his subsequent confession must be excluded from evidence.  A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *S.G. v. State*, 956 N.E.2d 668, 674 (Ind. Ct. App. 2011), *trans. denied*.  An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id*. In making this determination, this court does not reweigh evidence and considers conflicting evidence in a light most favorable to the trial court's ruling. *Id*.  However, "to the extent a ruling is based on an error of law or is not supported by the evidence it is reversible, and the trial court has no discretion to reach the wrong result." *Pruitt v. State*, 834 N.E.2d 90, 104 (Ind. 2005).

[10] Our supreme court has clearly identified how we are to determine the voluntariness of a *Miranda* waiver.

> In determining the voluntariness of a Miranda waiver, we examine the totality of the circumstances surrounding the interrogation to determine whether the suspect's choice was the product of a free and deliberate choice rather than intimidation, coercion, or deception and whether the waiver was made with a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them].

* * *

> Relevant considerations include the juvenile's physical, mental, and emotional maturity; whether the juvenile or his or her parent understood the consequences of the juvenile's statements; whether the juvenile and his or her parent were informed of the delinquent act for which the juvenile was suspected; the length of time the juvenile was held in custody before consulting with his or her parent; whether there was any force, coercion, or inducement; and whether the juvenile and his or her parent had been advised of the juvenile's Miranda rights.

*D.M. v. State*, 949 N.E.2d 327, 339-340 (Ind. 2011) (internal quotations and citations omitted).

[11]    The special status accorded juveniles in other areas of the law is fully applicable in the area of criminal procedure. *S.D. v. State*, 937 N.E.2d 425, 429 (Ind. Ct. App. 2010) (citing *Hall v. State*, 346 N.E.2d 584, 586 (Ind. 1976)), *trans. denied*. "To give effect to that status in the context of waiving intricate, important, and long established Fifth and Sixth Amendment rights, we require that a juvenile be afforded a meaningful opportunity to consult with a parent or guardian before the solicitation of any statement." *Id*. (citation omitted). Thus, Indiana Code Section 31-32-5-1 (2015) provides that a juvenile's state or federal constitutional rights may be waived only:

> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
>
> > (A) that person knowingly and voluntarily waives the right;
>
> * * *

> (C) meaningful consultation has occurred between
> that person and the child; and

> (D) the child knowingly and voluntarily joins with
> the waiver[.]

Our supreme court has held that a parent-child consultation under this statute "can only be meaningful where both the juvenile and the parent are advised of the juvenile's rights *prior to* the consultation." *D.M.*, 949 N.E.2d at 341-42 (emphasis added); *see also Douglas v. State*, 481 N.E.2d 107, 111 (Ind. 1985) ("[P]ursuant to *Lewis* [*v. State*, 288 N.E.2d 138 (Ind. 1972)], the consultation must occur after the advisement of rights but prior to the decision to execute a waiver and make a statement.").

[12] Here, the officer interviewing D.T. allowed him to consult privately with his mother only *before* the officer advised D.T. of his *Miranda* rights. D.T.'s consultation with his mother regarding his rights cannot have been meaningful because neither he nor his mother was told what D.T.'s rights were *before* their consultation.[2] *Id*. Therefore, D.T.'s subsequent waiver of his rights and confession to the crime cannot be used against him. *Lewis*, 288 N.E.2d at 142.

---

[2] After handing the waiver form to D.T., Sergeant Hendricks stepped out of the interrogation room for only eight seconds, which, contrary to the State's argument, did not provide an opportunity for a "meaningful consultation" between D.T. and his guardian. First, eight seconds can hardly be considered adequate time for a meaningful consultation. Second, those eight seconds were recorded by an audio/visual video camera and therefore were not private as required for a juvenile's "meaningful consultation" with his parent. *S.D. v. State*, 937 N.E.3d 425, 431 (Ind. Ct. App. 2010), *trans. denied*; *see also J.L. v. State*, 5 N.E.3d 431, 439 (Ind. Ct. App. 2014) (juvenile was not provided a meaningful opportunity to consult with his parent when the audio/visual video camera in the interview room was never turned off).

### Issue Two:  Sufficiency of the Evidence

[13]  D.T. contends that the State failed to provide sufficient evidence to support his conviction for robbery.  In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses.  *See, e.g.*, *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010).  We consider only the probative evidence and reasonable inferences therefrom that support the conviction, *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans. denied*, and we "consider conflicting evidence most favorably to the trial court's ruling," *Wright v. State*, 828 N.E.2d 36, 352 (Ind. 2005).  We affirm if the probative evidence and reasonable inferences drawn from that evidence "could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Jackson*, 925 N.E.2d at 375.

[14]  The State charged D.T. with robbery as a Level 5 felony pursuant to Indiana Code Section 35-42-5-1(2).  That statute provides that a person commits robbery if he "knowingly or intentionally takes property from another person or from the presence of another person by putting any person in fear." *Id*.  The State charged D.T. with committing robbery by intentionally taking "various prescription narcotics from the person or presence of Morgan Edwards by putting Morgan Edwards in fear."  Appellant's App. at 69.  Thus, to prove the crime charged, the State first had to prove that D.T. took the property "from the presence of" Morgan Edwards.  The evidence shows that the narcotics were taken from Elroy, in Edwards' presence.  That is sufficient to show the property

was taken "from the presence of" Edwards.[3]  *See, e.g.*, *Gordon v. State*, 499 N.E.2d 228, 229 (Ind. 1986).

[15]  The State was next required to prove that, by putting *Edwards* in fear, D.T. caused *Elroy* to hand over the narcotics to D.T.  "[A] robbery by fear is not accomplished when a bystander is afraid if that bystander's fear did not contribute to the victim's surrender of the property."  *Rowe v. State*, 496 N.E.2d 585, 590 n.2 (Ind. Ct. App. 1986).  There must be a causal relationship or nexus between the act of putting a person in fear and the victim's decision to surrender the property.  *Id.*  Here, Edwards testified that she was afraid, but there was no evidence that Elroy gave the narcotics to D.T. *because* Edwards was in fear. Elroy did not testify that Edwards was in fear, nor did he testify that he observed any signs of fear in Edwards.  Instead, when Elroy was asked at trial, "And what thoughts were going through your head" after Edwards handed him the note, he stated only, "I guess mainly just the process, you know, making sure I do the right thing with those medications and tracker, get them in the bag and get the individual out the door."  Tr. at 34.  There was no evidence that Edwards communicated her fear to Elroy or that Elroy saw anything that made him believe Edwards was in fear.  Edwards testified that she "just kind of stood out of the way."  Tr. at 18.  There was no evidence from which a fact finder could infer that Elroy had any concern for Edwards' state of mind, much less

---

[3]  Of course, we do not consider D.T.'s confession that was obtained in violation of his constitutional rights.

that Edwards' fear contributed to Elroy's surrender of the property. *Rowe*, 496 N.E.2d at 590 n.2.

[16] And there was also no evidence that Elroy was in fear.[4] Elroy did not testify that he was afraid, and there was no evidence from which the trier of fact could infer that Elroy was in fear. For example, there was no evidence that D.T. threatened Elroy or anyone else, nor was there any evidence that D.T. had a weapon. *Cf. Rickert v. State*, 876 N.E.2d 1139, 1141 (Ind. Ct. App. 2007) (noting fear could be inferred from the fact that the defendant pointed a gun at the victim). Rather, the evidence showed that D.T. handed the note to Edwards[5] and then simply stood at the counter, waiting.

[17] In sum, neither Edwards nor Elroy gave testimony that would establish the fear element of robbery as charged. There was no evidence that Elroy was in fear, and there was no evidence that Elroy knew or believed Edwards was in fear. Therefore, the State did not provide sufficient evidence to support D.T.'s conviction for count III, robbery by putting a person in fear, and we must reverse that conviction.

---

[4] D.T. maintains that it is not relevant whether Elroy was in fear because the charging information specifically stated that D.T. took the property by putting *Edwards* in fear. Thus, D.T. states it would not suffice for the State to show that D.T. committed robbery by placing *Elroy* in fear. However, we do not address this argument as there was no evidence that Elroy was in fear in any case.

[5] The note D.T. handed to Edwards said, "This is a robbery . . . " and demanded medication, but this is not sufficient evidence that he committed robbery because it does not show that D.T. used, or threatened to use, force or that he put any person in fear, either one of which is a required element to establish robbery. I.C. § 35-42-5-1.

[18] However, when a conviction is reversed because of insufficient evidence, we may remand for the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense. *Ball v. State*, 945 N.E.2d 252, 258 (Ind. Ct. App. 2011), *trans. denied*. Theft is a lesser included offense of robbery. *Tingle v. State*, 632 N.E.2d 345, 350 (Ind. 1994). To prove theft as a Class A misdemeanor, the State must prove that a person knowingly or intentionally exerted unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. Ind. Code § 35-43-4-2(a).[6] Here, the witness testimony and the note D.T. handed to Edwards were sufficient evidence that D.T. committed theft as a Class A misdemeanor.

## Conclusion

[19] Since D.T.'s confession cannot be used against him due to an invalid waiver of his rights, and since the State failed to provide other evidence sufficient to support D.T.'s conviction for robbery, we must reverse his conviction for robbery, as a Level 5 felony. However, there was sufficient evidence that D.T. committed the lesser included offense of theft as a Class A misdemeanor. Therefore, we remand for the trial court to enter a conviction for theft, as a Class A misdemeanor.

[20] Reversed and remanded with instructions.

---

[6] There is not sufficient evidence in the record to prove D.T. committed theft as a felony because there is no evidence of the value of the narcotics or that D.T. had a criminal history. *Id*.

Robb, J., and Crone, J., concur.